**Mickey M. JEFFRIES, Plaintiff-Appellant,**

v.

**UNITED STATES of America, Defendant-Appellee.**

**No. 71-1480.**

United States Court of Appeals, Ninth Circuit.

March 30, 1973.

---

L. R. Bretz (argued), Bretz & Gabriel, Great Falls, Mont., for plaintiff-appellant.

Otis L. Packwood, U. S. Atty. (argued), William A. Brolin, Asst. U. S. Atty., Butte, Mont., for defendant-appellee.

Before KOELSCH and CARTER, Circuit Judges, and HARRIS,* District Judge.

HARRIS, District Judge:

Jeffries brought this Federal Tort Claims Act case for injuries sustained when he was hurt in a mining accident in Montana. Following trial, the district court judge found against Jeffries and in favor of the Government. Jeffries appeals.

The facts may be summarized as follows. The Government, in the course of the construction of a dam on the Kootenai River near Libby, Montana, found it necessary to escavate some seven miles of tunnel as part of the relocation of the Great Northern Railroad. Such work was begun in June, 1966.

In order to facilitate such excavation, the Government, through its Corps of Engineers, let a contract for construction to Walsh-Groves, a joint venture. The contract required, *inter alia*, that the contractor establish a safety program, comply with Corps of Engineers Safety Manual EM 385–1, and complete the work subject to inspection by Corps inspectors to insure compliance with the terms of the contract.

Jeffries was employed by Walsh-Groves as a miner. He worked on the crown deck (upper deck) of a multi-leveled movable scaffold called a "jumbo." To accomplish the excavation, the jumbo would be moved to the face of the tunnel. Miners on the four levels of the jumbo would simultaneously drill holes into the face of the tunnel and load such holes with explosives. The jumbo would then be moved back, the loads fired, and the debris loosened by the blast removed and the operation repeated. After a blast and before drilling was resumed, the tunnel was inspected to determine if any loose rock remained in the crown or walls of the tunnel, and any rock so found was "barred down," meaning that miners with steel bars pried out the loose rock.

On May 7, 1967, about a half hour prior to the end of his shift, Jeffries left his position at the face of the tunnel where he had been drilling in order to get some needed drill steel. At a point about twenty feet from the face of the tunnel a rock of substantial size and weight fell upon Jeffries.

On each shift a Corps safety inspector actually inspected the operations. He worked along with the Walsh-Groves employees and when he saw any dangerous practice he would give orders directly to the men to stop it. After each blast the inspector checked the crown for loose rock. On these inspections he was accompanied by one of the Walsh-Groves supervisory personnel. If the inspector thought there was a need to bar down loose rock, he would directly order the miners to do it. On the day in question Corps Inspector Trees had inspected the portion of the crown from which the rock fell, in the company of a Walsh-Groves supervisory employee. Neither the inspector nor the supervisory employee found a dangerous condition.

It was the practice in some sections of the tunnel, including the portion here in question, to place screens on the crown of the tunnel to prevent loose rock from falling. The screens were fastened by rock bolts which held them in place and also stabilized the crown. Screens had not been placed over that portion of the crown from which the damaging rock fell. Although there were contradictory accounts from the witnesses at trial, the district court judge found that no rock bolt had been drilled into the rock which fell.

---

* The Honorable George B. Harris, Senior United States District Judge, Northern District of California, sitting by designation.

Jeffries raises three specifications of error on appeal. The first concerns the Pre-Trial Order in the case. Prior to trial, the parties prepared a Pre-Trial Order which included certain stipulations of fact. It was presented to the district court judge, but he did not read or approve it at that time.

Following trial, it became apparent to the judge that certain of the stipulated facts no longer remained tenable in view of the evidence adduced at trial. He thereupon entertained the motion of the Government to amend the Pre-Trial Order. Such motion was granted with respect to two amendments only, consisting of deletion of:

> It was a duty of the Government Inspectors if they saw a dangerous condition to warn the man or men involved and/or their supervisor.

and deletion of:

> At about this time Edgar R. Payne and Argol Drollinger had driven a rock bolt into a mud fault in the overhead.

The evidence revealed that the use of the word "duty" in the first sentence deleted was improper in that an obligation, rather than a legal duty, was what the judge found the Government owed. As to the second sentence deleted, the evidence was in conflict, but as noted above, the court made a specific finding contrary to the proposed stipulation.

Jeffries claims that the court should not have permitted such amendment after trial, although he makes no specific claims of prejudice and apparently was not hampered in the full presentation of his position at trial.

Rule 16 of the Federal Rules of Civil Procedure provides that a Pre-Trial Order when entered controls the subsequent course of the action "unless modified at the trial to prevent manifest injustice."

██ Certainly under this standard a Pre-Trial Order is not an inexorable decree and may, under proper circumstances, be modified. *See* Phoenix Mut.

Life Ins. Co. of Hartford, Conn. v. Flynn, 83 U.S.App.D.C. 381, 171 F.2d 982, 983 (1948); 3 Moore's Federal Practice Para. 16.20 at 1136, 1138. The proper approach to be taken was outlined in Central Distributors, Inc. v. M. E. T., Inc., 403 F.2d 943, 945, 946 (5th Cir. 1968):

> It has been suggested that proper treatment of the pre-trial order after entry requires an appropriate balance between firmness to preserve the essential integrity of the order, and adaptability to meet changed or newly discovered conditions or to respond to the special demands of justice. [Footnote omitted.]
>
>    \*    \*    \*    \*    \*    \*
>
> A stipulation of counsel originally designed to expedite a trial should not be rigidly adhered to when it becomes apparent that it may inflict manifest injustice upon one of the subscribers thereto. [Citation omitted.]

*See also* Washington Hospital Center v. Cheeks, 129 U.S.App.D.C. 339, 394 F.2d 964, 965–966 (1968).

We find that Jeffries was not prejudiced by the amendments here complained of and that they were properly granted to prevent manifest injustice.

Jeffries' next specification of error concerns the claim that the United States should have been held liable here under the "Good Samaritan Doctrine"; because the Government gratuitously undertook to assume the duty of protecting those situated such as Jeffries from harm, it is liable for its negligence in such undertaking.

██ The Good Samaritan Doctrine, which is recognized under the applicable law of Montana, is a theory of liability encompassed by the Federal Tort Claims Act. Roberson v. United States, 382 F. 2d 714, 718 (9th Cir. 1967).

██ *Roberson,* the leading case on the issue now under consideration, distinguished the two forms of the Good Samaritan Doctrine as described in the

Restatement of Torts, Second. Restatement of Torts, Second, § 323 provides for liability in the "two-person" situation. Restatement of Torts, Second, § 324A, the "three-person" section primarily relied on here, provides:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
>
> (a) his failure to exercise reasonable care increases the risk of such harm, or
>
> (b) he has undertaken to perform a duty owed by the other to the third person, or
>
> (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

Under *Roberson, supra* at 721, the following elements are necessary to a claim under § 324A:

> (1.) The actor, in this case the Government, must undertake, gratuitously or for consideration, to render services to another;
>
> (2.) The services so rendered must be of a kind which the actor should recognize as necessary for the protection of third persons [in this case those situated like the plaintiff];
>
> (3.) The actor must fail to exercise reasonable care in the performance of his undertaking;
>
> (4.) The failure to exercise reasonable care must result in physical harm to the third persons or their things; and
>
> (5.) The actor's failure to exercise such care must (a) increase the risk of such harm, or (b) the undertaking must have been to perform a duty owed by the other to the third persons, or (c) the harm must be suffered because of the reliance of the other or the third persons upon the undertaking.

In *Roberson*, this Court held that the first element of the test had not been satisfied because by merely conducting a safety inspection program the Government was not undertaking a legal duty to render services. In *Roberson*, as here, the contract under which the Government had arranged for the contractor therein to build a dam obligated the contractor to provide for the safety of its employees and reserved to the Government the right of inspection. The contractor there was requested to comply with applicable safety regulations and the Government could inspect to insure compliance with such regulations. There, too, the Government utilized a safety management officer and assistants.

The district court here found *Roberson* to be fundamentally indistinguishable and thus controlling. That conclusion was correct.

█ In finding a failure of proof on the first element of the "three-person" Good Samaritan test, the *Roberson* Court relied upon the line of cases holding that the Government's reservation of a right of inspection does not, without more, impose upon it a legal duty such as to render it liable for injuries suffered by the employees of its independent contractors. Numerous cases support the position taken in *Roberson*—and by the district court here—that reservation of such right of inspection or actual inspection, without more, does not subject the Government to liability. *See, e. g.,* Lemley v. United States, 317 F.Supp. 350, 359–361 (N.D.W.Va.1970), affirmed, 455 F.2d 522 (4th Cir. 1971); Craghead v. United States, 423 F.2d 664, 666 (10th Cir. 1970); Irzuk v. United States, 412 F.2d 749, 751 (10th Cir. 1969); Gowdy v. United States, 412 F.2d 525, 529 (6th Cir. 1969), cert. den., 396 U.S. 960, 90 S.Ct. 437, 24 L.Ed.2d 425 (1969), reh. den., 396 U.S. 1063, 90 S.Ct. 750, 24 L.Ed.2d 756 (1970); Wright v. United States, 404 F.2d 244,

247 (7th Cir. 1968); United States v. Page, 350 F.2d 28, 30–31 (10th Cir. 1965), cert. den., 382 U.S. 979, 86 S.Ct. 552, 15 L.Ed.2d 470 (1966); Kirk v. United States, 270 F.2d 110, 116–117 (9th Cir. 1959); Richardson v. United States, 251 F.Supp. 107, 111 (W.D.Tenn. 1966).

■ Jeffries tries to distinguish *Roberson* by the contention that there is here evidence that the Government assumed a duty for the benefit of third persons, namely the employees of Walsh-Groves, but the district court found to the contrary and such finding is not clearly erroneous. Although the Government may have had somewhat more direct control and supervisory power here than in *Roberson,* such influence also existed in other cases cited above wherein the Government was nevertheless held not liable. *See* Gowdy v. United States, *supra*; Wright v. United States, *supra*; Richardson v. United States, *supra*.

■ Jeffries' third specification of error is predicated upon the extra-hazardous nature of the activity undertaken by the Government.

Jeffries recognizes that under Dalehite v. United States, 346 U.S. 15, 45, 73 S.Ct. 956, 97 L.Ed. 1427 (1953), the Government cannot be liable without fault under the Federal Tort Claims Act simply by virtue of engaging in extra-haxardous activity. Rather, Jeffries' theory is that the Government's undertaking of such activity imposed upon it a non-delegable duty of due care.

The case law, however, does not support Jeffries' position. There is substantial doubt as to whether the "non-delegable duty" theory is available under the Federal Tort Claims Act. *See* United States v. Page, *supra,* 350 F.2d at 33–34. Moreover, on the facts of this case, the applicable law of Montana would appear to deny recovery. *See* Ashcraft v. Montana Power Company, 480 P.2d 812, 813 (Mont.1971).

Affirmed.