Gary THOMPSON, an Incompetent, by Charles F. Thompson, his Guardian ad litem, Plaintiff-Appellant,

v.

UNITED STATES of America, Defendant-Appellee.

No. 76–2555.

United States Court of Appeals, Ninth Circuit.

March 13, 1979.

William M. Shernoff (argued), of Hafif & Shernoff, Claremont, Cal., for plaintiff-appellant.

Dzintra J. Janavs, Asst. U. S. Atty. (argued), Los Angeles, Cal., for defendant-appellee.

Before CHAMBERS and HUG, Circuit Judges, and SOLOMON,* District Judge.

HUG, Circuit Judge:

Gary Thompson, through his guardian ad litem, brought an action against the United States under the Federal Tort Claims Act, 28 U.S.C. § 1346(b), for injuries he received in the course of a motorcycle race on federal land. The Bureau of Land Management (BLM) had granted a permit to Ronald Vincellette, on behalf of the Sportsman Racing Association (Association) to conduct the race. The appellant contends that the injury resulted from the negligent marking of the race course or the failure to properly control the spectators and that the United States owed a duty to appellant to assure the race was conducted safely. The district court entered a summary judgment for the government, from which Thompson appeals. We affirm.

### Facts

On September 18, 1972, the Riverside, California office of the BLM received a Special Land Use Application from the Association, for permission to conduct a European-style scrambles motorcycle race on October 1, 1972. The BLM issued the permit on September 29. As a special condition to the permit, Ronald Vincellette, on behalf of the Association, agreed to assume responsibility for public safety at the event. The Association laid out a race course through the hilly desert near Adelanto, California, on United States government land. The course was marked with colored ribbons tied to bushes, and the spectator area near the finish line was sectioned off for several hundred feet by a rope with colored pennants. Three races had been run prior to the 250 cc motorcycle novice race in which Thompson participated. Thompson commenced the fourth race and, when approaching the finish line at the end of his third and final lap, he crashed and was struck by oncoming racers, causing his injuries.

* The Honorable Gus J. Solomon, Senior United States District Judge for the District of Oregon, sitting by designation.

### Discussion of the Law

A summary judgment is proper only where there is no genuine issue of any material fact or when, viewing the evidence and the inferences which may be drawn therefrom in the light most favorable to the adverse party, the movant is clearly entitled to prevail as a matter of law. *People of State of California ex rel. Dep't of Transp. v. United States,* 561 F.2d 731, 735 (9th Cir. 1977); *Zweig v. Hearst Corp.,* 521 F.2d 1129, 1134 (9th Cir.) *cert. denied,* 423 U.S. 1025, 96 S.Ct. 469, 46 L.Ed.2d 399 (1975).

The only real dispute concerning the facts is whether the accident happened as a result of spectators being allowed to walk in the path of the appellant driver, causing him to swerve to miss them, or whether it resulted merely from his own carelessness in attempting to pass another motorcycle at the end of the race. In reviewing this summary judgment, we must assume the facts to be as stated by the appellant and determine whether the government is entitled to a judgment as a matter of law. We must therefore assume that the injury resulted from a negligent failure to mark the race course properly or to control the spectators so as to avoid interference with the racers.

■■■ Appellant Thompson seeks to recover damages from the United States under the Federal Tort Claims Act (FTCA), which provides at 28 U.S.C. § 1346(b):

> [T]he district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

No action lies against the United States unless the Congress has authorized it and the relinquishment of sovereign immunity must be clear to give jurisdiction for tort actions. ' *Dalehite v. United States,* 346 U.S. 15, 30–31, 73 S.Ct. 956, 97 L.Ed. 1427 (1953). The United States is liable under the FTCA only for damages caused by the negligent or wrongful act or omission of an employee of the United States. *Logue v. United States,* 412 U.S. 521, 93 S.Ct. 2215, 37 L.Ed.2d 121 (1973).

■■■ The government is not responsible for the negligence of the employees of other entities or agencies, even though they are working under a federal contract, maintaining property owned by the federal government, or working on projects funded by the federal government. *Logue,* 412 U.S. 521, 93 S.Ct. 2215 (county employees under a contract to house federal prisoners); *Maryland v. United States,* 381 U.S. 41, 85 S.Ct. 1293, 14 L.Ed.2d 205 (1965) (state national guard civilian employees maintaining federally-owned aircraft); *United States v. Orleans,* 425 U.S. 807, 96 S.Ct. 1971, 48 L.Ed.2d 390 (1976) (community action agency funded under a federal program). The United States thus is not liable under the FTCA for any negligence of agents or employees of the Association, even though they were conducting the race on federal land, since they could not be classified as federal employees.

■■■ The FTCA furthermore does not authorize suit against the government on claims based upon strict or absolute liability for ultrahazardous activity. *Laird v. Nelms,* 406 U.S. 797, 92 S.Ct. 1899, 32 L.Ed.2d 499 (1972); *Dalehite,* 346 U.S. at 44–45, 73 S.Ct. 956. Negligence or a wrongful act or omission of a government employee must be found under circumstances where the United States, if a private person, would be liable in accordance with the law of California, where the alleged tort occurred. 28 U.S.C. § 1346(b).

The appellant argues that the government had a duty to see that the race course was designed properly and that the spectators were controlled, and that the BLM employees were negligent in failing to carry out that duty. Let us examine the contend-

ed origins of this duty. Appellant first argues that the mere status of a landowner who permits another to use its land imposes a duty under California law to assure that the activities conducted on the land are not conducted negligently.

■ The appellee counters with the contention that California Civil Code, § 846 severely restricts the liability of landowners who permit the general public to use their land for recreation.[1] The purpose of the statute was to encourage landowners to allow members of the general public to use their land for recreational purposes, including vehicular riding, without incurring liability for permitting that use. See *Phillips v. United States,* 590 F.2d 297 at 298 (9th Cir. 1979). However, § 846 has three exceptions wherein the limitation of liability does not apply.[2] One exception is when permission to enter for recreational purposes was "granted for a consideration". This exception prevents the application of § 846 in this case. The BLM charged the Sportsman Racing Association a $10 application service fee, as required by 43 C.F.R. § 2920.2. In addition, the BLM, as one of the conditions of the permit (condition 2) required the Association to pay a minimum rental charge of $10, as mandated by 43 C.F.R. § 2920.4.[3] The Association, in turn, charged Thompson an entry fee of $6. With a rental charge having been made for the use of the land, it is clear that permission to enter the government land was "granted for a consideration", and therefore California Civil Code § 846 does not apply so as to limit the liability of the landowner.

We must therefore examine what duty of care the landowner has under California law without the limitations of § 846.

■ There is no evidence that there was any hidden peril or inherently dangerous condition existing on the property when the permittee took possession. It is clear that any negligence claimed resulted from the faulty design of the race course or the lack of control of the spectators, after the lessee took possession. There is thus no basis for finding negligence on the part of any federal employee because of failure to warn of a hidden peril or a known hazardous condition on the land. See *Epling v. United States,* 453 F.2d 327 (9th Cir. 1971) (cable strung across a road on federal land by federal employees) and *Phillips v. United States,* 590 F.2d 297 (alleged failure to warn of

---

1. California Civil Code § 846 states in part: "An owner of any estate in real property owes no duty of care to keep the premises safe for entry or use by others for fishing, hunting, camping, water sports, hiking, spelunking, riding, including animal and all types of vehicular riding, rock collecting, or sightseeing or to give any warning of hazardous conditions, uses of, structures, or activities on such premises to persons entering for such purposes, except as provided in this section.

"An owner of any estate in real property who gives permission to another for entry or use for the above purposes upon the premises does not thereby (a) extend any assurance that the premises are safe for such purposes, or (b) constitute the person to whom permission has been granted the legal status of an invitee or licensee to whom a duty of care is owed, or (c) assume responsibility for or incur liability for any injury to person or property caused by any act of such person to whom permission has been granted except as provided in this section.

.   .   .

"Nothing in this section creates a duty of care or ground of liability for injury to person or property."

2. The three exceptions to the application of California Civil Code § 846 are set forth in that section as follows:

"This section does not limit the liability which otherwise exists (a) for willful or malicious failure to guard or warn against a dangerous condition, use, structure or activity; or (b) for injury suffered in any case where permission to enter for the above purposes was granted for a consideration other than the consideration, if any, paid to said landowner by the state; or (c) to any persons who are expressly invited rather than merely permitted to come upon the premises by the landowner."

3. 43 C.F.R. § 2920.4, as it existed in 1972 at the time of the accident, provided in pertinent part:

"Each permittee will be required to pay to the Bureau of Land Management, in advance, a rental determined by the authorized officer as the fair market value of the privileges granted .   .   .  . In no case will the minimum rental charge be fixed at less than $10 per payment." The regulation was amended in 1975 to eliminate the requirement for rental charges when the use of the land is for 90 days or less.

known hazardous conditions near San Antonio Falls in Angeles National Forest).

Generally, it has been an accepted rule of common law that the lessor of land (no matter how long or short the period) is not subject to liability to his lessee, or others upon the land with the consent of the lessee, for physical harm caused by any dangerous condition which comes into existence after the lessee has taken possession, with certain defined exceptions. *See Second Restatement of Torts,* § 355; Prosser, *Law of Torts,* p. 400 (4th ed.). The recognized exceptions as set forth in *Restatement,* §§ 357–62 may be summarized as follows:

1.  When lessor contracts to repair premises and fails to do so;
2.  When there were undisclosed dangerous conditions known to the lessor and unknown to the lessee;
3.  When lessor knows the lessee will admit the public and knows or has reason to know of a dangerous condition on the land existing when the lessee takes possession;
4.  When parts of the land are retained in the lessor's control, which lessee is entitled to use, or will use by necessity; and
5.  When the lessor undertakes to repair the premises and does so negligently.

None of these exceptions applies to the case at hand. Under the general common law rule, a landowner would not be found to have a duty, under the circumstances of this case.

However, appellant asserts that the law of California has departed from this common law rule, citing *Rowland v. Christian,* 69 Cal.2d 108, 70 Cal.Rptr. 97, 443 P.2d 561 (1968); *Quelvog v. City of Long Beach,* 6 Cal.App.3d 584, 86 Cal.Rptr. 127 (1970); *Brennan v. Cockrell Inc.,* 35 Cal.App.3d 796, 111 Cal.Rptr. 122 (1973) and *Uccello v. Laudenslayer,* 44 Cal.App.3d 504, 118 Cal.Rptr. 741 (1975). In none of these cases, however, has California extended liability or potential liability to a landowner for dangerous conditions on his land created by the lessee after the lessee took possession, unless the landowner had knowledge of the danger or participated in some way in creating it.

*Rowland v. Christian* involved the liability of a tenant, not a landowner, to persons on the premises; it eliminated the recognized distinctions between invitees, licensees and trespassers, but did not deal with the liability of landowners. The *Quelvog* case reversed a judgment on the pleadings where the complaint alleged the city had not only failed to enforce state law prohibiting operation of motor vehicles on public sidewalks, but actually created the danger by encouraging such operation (by maintaining depressions in the curbing for easy access for autoettes and informing the operators that they could use the sidewalks without interference by police). In *Brennan,* a tenant was injured when a handrail on a stairway broke. This involved the duty of a landowner to a tenant relative to a condition existing on the premises at the time the tenant took possession. The *Uccello* case involved a vicious dog owned by a tenant who bit a third person. The landowner knew of the vicious dog and the danger imposed and failed to terminate the tenancy after acquiring such knowledge.

None of these cases would extend the liability of a landowner to the situation here involved. The alleged negligence here did not involve defective or dangerous premises transferred to the Association, as in *Brennan*; nor did it involve participation in creating a dangerous condition of which it had specific knowledge, as in *Quelvog*; nor did the BLM have knowledge of the existence of a dangerous condition created by the tenant and thereafter fail to take action, as in *Uccello.*

Appellant next argues that the BLM assumed a duty to supervise the safety of the race by virtue of its own internal regulations, and that having undertaken the responsibility to supervise the race, it must carry it out, citing *Indian Towing Co. v. United States,* 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955). In *Indian Towing,* the Coast Guard actually maintained a light-

house and others relied upon it. In this case, the BLM did not supervise the race. It was clear from the provisions of the permit that the Association had the full responsibility for public safety and supervision of the race.[4] Neither the participants nor the spectators relied upon the BLM employees to supervise the race. No BLM employees were even present. *Indian Towing* is thus inapposite.

Appellant cites an internal instruction memorandum from the state director of the BLM to the regional offices, which was to take effect on September 18, 1972, the day the application was received, and which provided in part:

"(1) On-site inspections should be made by BLM before events to be sure that all pre-event conditions are met.

"(2) Inspection for compliance with permit stipulations should be made while the event is in progress."

This regional office instruction could not constitute an assumption of liability or responsibility by the government for injury to participants, as this would conflict with 43 C.F.R. 2920.3(d), which states:

"(d) Liability. The applicant shall agree and stipulate that the Federal Government, Department of the Interior and the Bureau of Land Management and its representatives shall not be responsible for damage or injury to persons and property which may occur during the permitted use period or as a result of such use."

■ Furthermore, the mere provision for government safety inspections, or the ability to stop an activity for failure to comply with safety standards, does not impose liability on the government for failure to do so. A government safety manual or safety program does not impose a special duty on the government. *See Kirk v. United States,* 270 F.2d 110 (9th Cir. 1959); *Lipka v. United States,* 369 F.2d 288, 291 (2d Cir. 1966), *cert. denied,* 387 U.S. 935, 87 S.Ct. 2061, 18 L.Ed.2d 997 (1967); *Grogan v. United States,* 341 F.2d 39, 43 (6th Cir. 1965); *cf. United States v. Page,* 350 F.2d 28 (10th Cir. 1965), *cert. denied,* 382 U.S. 979, 86 S.Ct. 552, 15 L.Ed.2d 470 (1966).

■ Appellant also cites a provision in the same memorandum from the state BLM director, which instructs the regional offices to require that a permittee obtain liability insurance for at least $100,000 bodily injury and $10,000 for property damage. It is appellant's contention that this imposes liability on the government for failure to require the insurance. No requirement of such insurance exists in the statute or in the pertinent regulations. Whether an instruction memorandum from a regional BLM office could impose a duty on the government to require such insurance is highly doubtful. However, we need not examine this question, since it has no bearing upon any liability of the government for injury to appellant. It bears only upon the ability of the permittee to respond for damages to the appellant. No judgment has been obtained against the permittee. With no unsatisfied judgment to which the insurance would be applied, the lack of insurance becomes irrelevant.

■ Finally the appellant contends that the BLM employees were negligent in issuing the permit at all to Vincellette and the Association. He cites 43 C.F.R. § 2924.-3(a), which states: "[T]he authorized officer may reject any application for any activity which he considers will constitute undue hazard to participants and spectators or will

---

4. An express condition of the permit provided: "The permittee agrees to assume responsibility for public safety and health during any phase of this event, including, but not limited to:
(a) Monitors for spectator control.
(b) Safety patrolmen on the competitive course.
(c) Sufficient sanitary facilities meeting the applicable standards and guidelines of the California State Department of Health and Welfare Service.
(d) Trash receptacles to handle expected need.
(e) First aid facilities and adequate evacuation vehicles proportionate to the size of the event.
(f) Ample communication facilities on site to coordinate the event." (Condition No. 4)

irreparably impair scenic and other values". There is no evidence that justifies a conclusion that the permittee was irresponsible or that the activity itself constituted an undue hazard. Furthermore, since the only negligent act would be the decision itself to issue the permit, this would be a discretionary act on a planning or policy level, as opposed to the operational level, liability for which would be precluded by 28 U.S.C. § 2680(a) which provides:

The provisions of this chapter and section 1346(b) of this title shall not apply to—

(a) Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

The act of exercising judgment as to whether to issue a permit would fall within the discretionary function exemption, as interpreted by the United States Supreme Court in *Dalehite v. United States,* 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1952). The Court there stated:

Where there is room for policy judgment and decision there is discretion. It necessarily follows that acts of subordinates in carrying out the operations of government in accordance with official directions cannot be actionable. If it were not so, the protection of § 2680(a) would fail at the time it would be needed, that is, when a subordinate performs or fails to perform a causal step, each action or nonaction being directed by the superior, exercising, perhaps abusing, discretion.

346 U.S. at 36, 73 S.Ct. at 968.

*See Martin v. United States,* 546 F.2d 1355 (9th Cir. 1976) (discretionary function exemption held to apply to the decision to close garbage dumps in national parks in connection with the management of grizzly

bears and park property); *See also United States v. Morrell,* 331 F.2d 498 (10th Cir. 1964) (held to apply to issuance of grazing permits). Not every discretionary act is exempt. Obviously, attending to many day-to-day details of management involves decisions and thus some element of discretion. The exercise of this kind of discretion does not fall within the discretionary function exemption. The distinction generally made in the application of the discretionary function exemption is between those decisions which are made on a policy or planning level, as opposed to those made on an operational level. A distinction can be readily seen in this case between the decision which was made in the exercise of the wide discretion afforded to the local BLM administrator by the regulations (43 C.F.R. §§ 2920–2924) in determining whether to issue a permit to the Sportsman Racing Association, as opposed to operational decisions which would have been encountered had the BLM employees actually undertaken the responsibility to set out and mark the race course or to control the spectators. Decisions as to where to place course markers or how to control the spectators would not be the kind of decision covered by the exemption. *See Driscoll v. United States,* 525 F.2d 136 (9 Cir., 1975) (inadequate vehicle and pedestrian control devices on an air base operated by the government).

Viewing the evidence in the light most favorable to the appellant, the government is entitled to prevail as a matter of law. The summary judgment is affirmed.