Saul E. BRAMER, Plaintiff-Appellant,

v.

UNITED STATES of America,
Defendant-Appellee.

No. 76–2131.

United States Court of Appeals,
Ninth Circuit.

April 16, 1979.

Rehearing Denied May 16, 1979.

James L. Marable, Los Angeles, Cal., for plaintiff-appellant.

Robert E. Kopp and Thomas G. Wilson, Washington, D. C., for defendant-appellee.

Before CARTER and WALLACE, Circuit Judges, and SOLOMON,* District Judge.

WALLACE, Circuit Judge:

Bramer appeals from a judgment in favor of the United States in this action brought pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–80. He sought relief for injuries suffered in a radiation accident which occurred at a government facility. The district court concluded that although New Mexico law would impose liability under the circumstances, federal law precluded relief. In light of recent state court decisions, we find that New Mexico law now does not allow relief in the circumstances of this case. On this ground, we affirm.

I

Los Alamos Scientific Laboratory (LASL) is a nuclear research facility owned by the United States, located on United States Government land in New Mexico, and operated under the auspices of the Atomic Energy Commission (AEC).[1] As authorized under its statutory mandate to insure the continued conduct of research, development and training in various nuclear energy fields, 42 U.S.C. § 2051(a),[2] the AEC contracted with the University of California (University) for the management and operation of LASL.

Contracts authorized by section 2051(a) must contain "such provisions (1) to protect health, (2) to minimize danger to life or property, and (3) to require the reporting and to permit the inspection of work performed thereunder, as the Commission may determine." 42 U.S.C. § 2501(d). The present contract placed the responsibility for safety precautions upon the University, and gave the AEC the right to inspect and to stop work for failure to comply with safety regulations.[3] Because of the contractual delegation of safety responsibilities to its independent contractors, the AEC apparently maintains only a very small staff to oversee this and several other contracts.

* Honorable Gus J. Solomon, United States District Judge, District of Oregon, sitting by designation.

1. The AEC was abolished effective January 19, 1975, by the Energy Reorganization Act of 1974, 42 U.S.C. §§ 5801–91, and was replaced by the Energy Research and Development Administration (ERDA). References herein to the AEC are to the ERDA, or include it, where appropriate.

2. 42 U.S.C. § 2051(a) provides:

The Commission is directed to exercise its powers in such manner as to insure the continued conduct of research and development and training activities in the fields specified below, by private or public institutions or persons, and to assist in the acquisition of an ever-expanding fund of theoretical and practical knowledge in such fields. To this end the Commission is authorized and directed to make arrangements (including contracts, agreements, and loans) for the conduct of research and development activities relating

to—[certain specified fields of nuclear science and technology].

3. The safety clause provided that:

The University shall take all reasonable precautions in the performance of the work under this contract to protect the health and safety of employees and of members of the public and to minimize danger from all hazards to life and property, and shall comply with all pertinent health, safety, and fire protection regulations and requirements (including reporting requirements) of the Commission communicated to the University. In the event the University fails to comply with said regulations or requirements of the Commission, the Contracting Officer may without prejudice to any other legal or contractual rights of the Commission, issue an order stopping all or any part of the work; thereafter a start order for resumption of work may be issued at the discretion of the Contracting Officer.

In a different clause the contract also reserved to the AEC the right to inspect.

Bramer, an employee of TRW Systems, another AEC independent contractor, was sent by TRW to LASL to observe the disassembly of a device containing radioactive material. This procedure entailed the use of a "hot" cell designed to contain radioactive materials and permit manipulation from outside. On July 31, 1971, as Bramer observed the disassembly procedure from a work area adjacent to the "hot" cell, a radiation leak developed. Bramer alleges that, as a result of this accident, he inhaled radioactive plutonium.

Pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2675, Bramer filed an administrative claim with the AEC for damages for personal injury. After the AEC denied this claim, Bramer commenced the present action, also pursuant to the Federal Tort Claims Act, 28 U.S.C. § 1346(b). Both parties filed motions for summary judgment in the district court. The district judge denied the motions. He then tried the issue of liability upon facts admitted in the pretrial order, and in affidavits and exhibits submitted by the parties in support of their summary judgment motions.

■ In his opinion, 412 F.Supp. 569, the district judge first decided that the AEC would owe a duty of care to Bramer under New Mexico law,[4] even though the University, the AEC's independent contractor, op-

erated LASL and was contractually responsible for safety. The court, citing *Pendergrass v. Lovelace*, 57 N.M. 661, 262 P.2d 231 (1953), found that New Mexico had accepted the doctrine of the Restatement (Second) of Torts § 416 (1965), which imposes a nondelegable duty upon the employer of an independent contractor when the work involves a peculiar risk of harm.[5] At the time of the district court's opinion, a New Mexico intermediate appellate court had also held that this duty was owed even to employees of an independent contractor. *Montanez v. Cass*, 89 N.M. 32, 38, 546 P.2d 1189, 1195 (Ct.App.1975), *rev'd in part and aff'd in part sub nom. New Mexico Elec. Serv. Co. v. Montanez*, 89 N.M. 278, 551 P.2d 634 (1976).[6]

■ After finding that the government potentially had this nondelegable duty under New Mexico law, the district court went on to determine whether federal law would permit imposition of liability. In the district judge's view, the statute authorizing contracts such as the one involved here, 42 U.S.C. § 2051(a), *supra* n.2, permits the AEC *in its discretion* to contract out the entire conduct of nuclear research projects, including responsibility for safety. Thus, imposition of a nondelegable duty would either interfere with or impose liability for the exercise of AEC discretion. This reasoning led the district court to enter judg-

4. New Mexico law is made applicable here by the Federal Tort Claims Act, which imposes liability, if otherwise proper, "in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b).

5. Restatement (Second) of Torts § 416 (1965) provides:

One who employs an independent contractor to do work which the employer should recognize as likely to create during its progress a peculiar risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the failure of the contractor to exercise reasonable care to take such precautions, even though the employer has provided for such precautions in the contract or otherwise.

Restatement (Second) of Torts § 427 (1965), which is "closely related to, and to a considerable extent a duplication of . . . § 416," *id.*, Comment a., provides:

One who employs an independent contractor to do work involving a special danger to others which the employer knows or has reason to know to be inherent in or normal to the work, or which he contemplates or has reason to contemplate when making the contract, is subject to liability for physical harm caused to such others by the contractor's failure to take reasonable precautions against such danger.

The district court found, and the government concedes, that the work involved here was inherently dangerous.

6. The district court apparently believed that the decision in *Montanez v. Cass* was that of the New Mexico Supreme Court. 412 F.Supp. at 573. As our citation indicates, this was a decision of the New Mexico Court of Appeals. It has since been reversed precisely on this point, in *New Mexico Electric*, discussed *infra*.

ment for the United States, apparently upon the grounds that 42 U.S.C. § 2051(a) either "preempted" the state nondelegable duty doctrine pursuant to the Supremacy Clause of the United States Constitution, Article VI, or made delegation of safety responsibilities a "discretionary function," and thus beyond the reach of Federal Tort Claims Act jurisdiction, 28 U.S.C. § 2680(a).[7]

## II

■ The district court devoted its attention principally to the question whether federal law permitted government liability in this case on a nondelegable duty theory. The premise of this inquiry was the district court's conclusion that the government would owe such a duty to Bramer under New Mexico law. In light of the subsequent decision of the New Mexico Supreme

Court in *New Mexico Elec. Serv. Co. v. Montanez, supra,* 89 N.M. 278, 551 P.2d 634, this conclusion can no longer stand.[8]

The plaintiff in *New Mexico Electric,* an electrician's helper employed by an independent contractor, was injured while climbing a power pole to disconnect secondary lines which had been installed by another independent contractor. The plaintiff apparently believed that all the lines, both primary and secondary, were dead. In fact, while the secondary lines were dead, a primary line remained "hot." This caused the plaintiff to receive a shock when he came into contact with a live "riser" wire coming from the primary wire. The riser wire had also been installed by the other independent contractor. Upholding a summary judgment for the employer of the two independent contractors, the New Mexico Supreme

---

**7.** Bramer correctly points out that this question of federal law does not involve preemption under the Supremacy Clause. If state law would impose liability based upon the exercise of an AEC function made discretionary by 42 U.S.C. § 2051(a), the case simply falls within an exception to the Federal Tort Claims Act, 28 U.S.C. § 2680(a), and the district court lacks subject matter jurisdiction, *Morris v. United States,* 521 F.2d 872, 874 (9th Cir. 1975). Jurisdiction is similarly lacking if state law would impose upon the government a type of liability, such as strict liability, which is beyond the cognizance of the Federal Tort Claims Act. *See Laird v. Nelms,* 406 U.S. 797, 798–99, 92 S.Ct. 1899, 32 L.Ed.2d 499 (1972); *Dalehite v. United States,* 346 U.S. 15, 30–31, 44–45, 73 S.Ct. 956, 97 L.Ed. 1427 (1953). State tort law "applies" to the federal government only to the extent that there has been a "clear relinquishment of sovereign immunity." *Dalehite v. United States, supra,* 346 U.S. at 31, 73 S.Ct. 956. Thus, the relevant inquiry is simply whether federal law permits liability. To say that the state tort law "conflicts" with federal law is to say only that federal law does not permit liability under the circumstances. This in no way implicates the Supremacy Clause.

**8.** We, therefore, need not address the question whether federal law would permit government liability to be predicated upon the nondelegable duty theory. Certain aspects of the district court's analysis of this question are, however, in substantial doubt in light of our decision in *McGarry v. United States,* 549 F.2d 587 (9th Cir. 1976), *cert. denied,* 434 U.S. 922, 98 S.Ct. 398, 54 L.Ed.2d 279 (1977). In *McGarry,* as in the present case, an injury resulted from the operations of an AEC independent contractor.

We held that federal law permitted government liability based upon Nevada's nondelegable duty doctrine to the extent that this doctrine did not impose liability without fault. Further, we rejected the argument that the "discretionary function" exception to Federal Tort Claims Act jurisdiction, 28 U.S.C. § 2680(a), precluded liability there.

On the assumption that a fault-based branch of the nondelegable duty doctrine, see note 7, *supra,* was correctly identified in *McGarry, but see* Kuersteiner & Graham, *The Federal Tort Claims Act and Nondelegable Duty: Wary of McGarry,* 37 Fed. Bar J. 72, 73, 79–81 (1978), the AEC may believe that as a practical matter *McGarry* compels detailed involvement in safety aspects of independent contractors' operations. Such involvement would effectively eliminate the government's "discretionary function" exemption from liability, without any judicial resolution of the question, expressly left open in *McGarry,* 549 F.2d at 591, whether delegation of all responsibility for safety is properly within the range of the AEC's statutory discretion. What is more, if the AEC becomes more intimately involved in daily operations, then it potentially will subject itself to liability for ordinary negligence, as well as for violations of any nondelegable duties. *See* notes 9 and 11, *infra.* In effect, this would also preclude the AEC from any argument that *McGarry's* nondelegable duty theory might, in some situations, actually lead to liability without fault. In our view, these are possibilities which invite congressional attention to the appropriate range of AEC discretion to delegate safety responsibilities.

Court held that the duties imposed upon employers of independent contractors for the performance of inherently dangerous work, Restatement (Second) of Torts §§ 413, 416, 427 (1965), do not run to employees of an independent contractor. 89 N.M. at 281, 551 P.2d at 637.[9]

Bramer attempts to limit *New Mexico Electric* to the situation in which the injured employee is working for the particular independent contractor employed to do the dangerous work which leads to the injury. But we do not believe that this limitation comports with the reasoning of the court in that case:

1. The principal reason for the development of the doctrine of liability of an employer of an independent contractor engaged in inherently dangerous work is to prevent the employer from escaping liability to others or shifting that liability to an independent contractor. In the case of industrial accidents, the vast majority are covered by Workmen's Compensation laws and to that extent the employer of the independent contractor does not escape or shift liability since the employer, in effect, pays the premium for Workmen's Compensation coverage.

2. There does not seem to be any valid reason why an employer of an independent contractor for the performance of specific work should be subjected to a greater liability than he would have if he had utilized his own employees on that particular work.

*Id.* at 281–82, 551 P.2d at 637–38 (quoting *King v. Shelby Rural Elec. Coop. Corp.*, 502 S.W.2d 659, 662–63 (Ky.1973), *cert. denied*, 417 U.S. 932, 94 S.Ct. 2644, 41 L.Ed.2d 235 (1974)). In our view, these reasons extend to the present situation, in which Bramer was employed by an independent contractor other than the one actually performing the dangerous work. The government pays the premium for Bramer's Workmen's Compensation coverage just as it pays the premium for employees of the University. Thus, the government does not "escape liability." Here too, there seems no valid reason why we should not apply the second rationale, which "indicates [that] an employer's liability to employees of inde-

---

**9.** The court in *New Mexico Electric* distinguished the earlier case of *DeArman v. Popps*, 75 N.M. 39, 400 P.2d 215 (1965), which held that Restatement of Torts § 414 (1934) *does* include employees of independent contractors. As carried forward in the Restatement (Second), this section provides:

> One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.

Restatement (Second) of Torts § 414 (1965). As the comments to this section make clear, this rule does not apply where the employer of the contractor merely has a right to order work stopped or resumed or to inspect its progress or receive reports. "Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, or as to operative detail." *Id.*, Comment c. In *DeArman v. Popps, supra*, the employer was held liable under circumstances in which its agents oversaw the entire operation of the work, and directly supervised the injured employee. *See New Mexico Elec. Serv. Co. v. Montanez, supra*, 89 N.M. at 282, 551 P.2d at 638. The issue of control also raises significant federal questions concerning the reach of the Federal Tort Claims Act. *See*

*United States v. Orleans*, 425 U.S. 807, 814, 96 S.Ct. 1971, 48 L.Ed.2d 390 (1976); *Logue v. United States*, 412 U.S. 521, 528, 93 S.Ct. 2215, 37 L.Ed.2d 121 (1973). *See also* note 11 *infra*.

In his reply brief in this court, Bramer argues, apparently for the first time, the rule of section 414 should apply in this case. The pretrial order specifies no issue of fact or law relating either to the extent of AEC control over the University's LASL operations, or to whether the control exercised would give rise to section 414 liability. Indeed, the admitted facts were that the University operated LASL and controlled the equipment causing the accident. No evidence was offered to rebut the AEC affidavits stating that the University had full operational control of LASL, and that the AEC had only a very few employees available to supervise this and several other similar contracts. It cannot be argued that *New Mexico Electric* first made this issue relevant, as that case simply confirmed the availability of section 414 as a possible basis of liability under *DeArman*. The district court did not consider the applicability of section 414, and despite questioning at oral argument, counsel for Bramer has made no showing of the exceptional circumstances necessary to warrant our consideration of it here. *See Frommhagen v. Klein*, 456 F.2d 1391, 1395 (9th Cir. 1972).

pendent contractors should not be greater than the employer's liability to his own employees." *Fresquez v. Southwestern Indus. Contractors & Riggers, Inc.*, 89 N.M. 525, 530, 554 P.2d 986, 991 (Ct.App.), *cert. denied*, 90 N.M. 8, 558 P.2d 620 (1976).[10]

One further reason compels us to reject Bramer's attempted limitation of *New Mexico Electric*. In that case, although the injured plaintiff was actually doing the dangerous work, it was also alleged that the accident was caused by the negligence of the independent contractor which had originally installed the secondary and "riser" wires. The court found a duty running from this other independent contractor to the plaintiff, *New Mexico Elec. Serv. Co. v. Montanez, supra*, 89 N.M. at 280–81, 551 P.2d at 636–37, but still no duty was im-

posed upon the employer of the two independent contractors. Here Bramer's position with respect to the University and the government is very similar to that of the *New Mexico Electric* plaintiff with respect to the other independent contractor and the general employer. Thus, absent a limiting interpretation of *New Mexico Electric* by the courts of New Mexico, we cannot accept Bramer's suggested limitation here.

■ We conclude that New Mexico law would not impose upon the government a nondelegable duty running to Bramer.[11] Therefore, he cannot prevail in his claim under the Federal Tort Claims Act, and on this ground, the judgment for the United States is affirmed.[12]

AFFIRMED.

---

10. The reasoning of the Kentucky court in *King v. Shelby Rural Elec. Coop. Corp., supra*, 502 S.W.2d 659 (Ky.1973), expressly approved in *New Mexico Electric, supra*, 89 N.M. at 281, 551 P.2d at 637, makes clear that this second rationale expresses two policies, one focused upon the employee, the other upon the employer. First, there is "no reason why [the employee], simply because he was an employee of an independent contractor, should be placed in a better position than if he had been an employee of [the general employer], in which case his recovery would be limited without question to the benefits provided by the Workmen's Compensation Act." *King v. Shelby Rural Elec. Coop. Corp., supra*, 502 S.W.2d at 663. Second, there is

> no valid reason why [the employer] should be subjected to more liability simply because it engaged the services of a qualified independent contractor. Employers frequently farm out work which requires some special skill to an independent contractor skilled in that particular work. The imposition of additional tort liability upon the employer because of the selection of an independent contractor would have a tendency to discourage the practice of selecting skilled independent contractors and cause employers to do the work with their own, sometimes less skilled, work force.

*Id.*

The first policy, which looks to the employee, clearly applies to the facts of the case now before us. Bramer suggests no reason why he should be placed in a better position than that of a government employee. The second policy, which seeks to encourage employers to utilize skilled contractors for particularized work beyond the employer's competence, does not directly apply here because Bramer was not do-

ing the work. Nonetheless, this policy certainly does not cut in Bramer's favor in the present situation.

11. We do not understand plaintiff to question the well-established rule that neither the reservation of a right to inspect and approve of the work of an independent contractor nor actual inspection, even if allegedly negligent, alone subjects the government to liability. *Jeffries v. United States*, 477 F.2d 52, 56 (9th Cir. 1973); *Roberson v. United States*, 382 F.2d 714, 718–22 (9th Cir. 1967); *United States v. Page*, 350 F.2d 28, 30–31 (10th Cir. 1965), *cert. denied*, 382 U.S. 979, 86 S.Ct. 552, 15 L.Ed.2d 470 (1966); *Kirk v. United States*, 270 F.2d 110, 116–17 (9th Cir. 1959).

*Jeffries* closely resembles the present case. There an employee of a government contractor was injured while working on a tunnel excavation project. The contract required that the contractor establish a safety program, comply with certain Corps of Engineers safety regulations, and complete the work subject to inspection by government engineers to insure compliance. 477 F.2d at 54. The injured plaintiff alleged that the government engineer negligently inspected the work, and that the hazardous nature of the work imposed a nondelegable duty upon the government. There, as here, we held that some aspect of state law precluded imposition of a nondelegable duty under the circumstances. *Id.* at 57. As pointed out above, we also held that "reservation of [a] right of inspection or actual inspection, without more, does not subject the Government to liability." *Id.* at 56.

12. "[A] Court of Appeals may affirm on any ground squarely presented on the record, even though the trial court may have based its deci-

---

sion on a different ground." *M.O.S. Corp. v. John I. Haas Co.*, 375 F.2d 614, 617 (9th Cir. 1967) (footnote omitted).