**John E. LEWIS and Roseanne M. Lewis, Plaintiffs,**

**v.**

**UNITED STATES of America, Pershing County Water District, Defendants.**

**No. CIV–R–77–166–ECR.**

United States District Court, D. Nevada.

Aug. 18, 1980.

Robert E. Rose, Las Vegas, Nev., for plaintiffs.

Diehl, Recanzone & Evans, Fallon, Nev., for Pershing County Water District.

Mark S. Feldheim, U. S. Dept. of Justice, Washington, D. C., for United States of America.

## ORDER

EDWARD C. REED, Jr., District Judge.

Plaintiff John E. Lewis (Plaintiff) was employed as a carpenter by Ray N. Bertelsen Company, Inc., (Bertelsen) in raising the elevation of and otherwise improving the Rye Patch Dam in Pershing County, Nevada. He was seriously injured when the cables holding a raised dam gate tore loose from their shackles, allowing the gate to hit him as he worked below.

Defendant United States was the owner of the facilities, which were operated and

maintained by defendant Pershing County Water Conservation District (PCWCD) pursuant to a contract between said defendants. The improvements were being made by Bertelsen under a contract between it and the United States.

Plaintiff has received Nevada Industrial Insurance Act (workmen's compensation) benefits by virtue of coverage provided by Bertelsen. He has sued the United States pursuant to the Federal Tort Claims Act (28 U.S.C. §§ 1346(b), 2671–2680), alleging that the cables had been installed negligently, that the United States had been negligent in failing to properly inspect the cables and that the United States negligently failed to take proper safety precautions in connection with work being performed under the suspended dam gate. The cables themselves had been installed by PCWCD, at the United States' direction, in January 1968. The accident that injured plaintiff occurred in March 1976. The United States had inspected the dam gates at least four times in the intervening period, but did not investigate the connections of the cables to the gates because those connections were under water.

The United States has moved for a summary judgment on the ground that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. Points and authorities have been filed and a hearing on the motion was held on June 2, 1980.

■ 28 U.S.C. § 1346(b) gives United States district courts jurisdiction "... of civil actions on claims against the United States, for money damages for ... personal injury ... caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." Accordingly, the law of Nevada governs the liability of the United States for its alleged negligence. *McGarry v. United States*, 370 F.Supp. 525 (D.Nev.1973), modified on other

grounds 549 F.2d 587 (9th Cir. 1976), cert. den. 434 U.S. 922, 98 S.Ct. 398, 54 L.Ed.2d 279 (1977); see also *Massachusetts Bonding Co. v. United States*, 352 U.S. 128, 77 S.Ct. 186, 1 L.Ed.2d 189 (1956). Both the legislative and the decisional law of the state are considered in determining such liability. *United States v. Sutro*, 235 F.2d 499 (9th Cir. 1956). Thus, whether a cause of action has been alleged is controlled by state law. Nevertheless, whether a particular cause of action constitutes a claim that is excluded from coverage by the Federal Tort Claims Act is determined by federal law. *In re Bomb Disaster at Roseville, Cal., on April 28*, 438 F.Supp. 769 (E.D.Cal.1977). As to such exclusion, the relevant inquiry is whether federal law permits the United States to be held liable. *Bramer v. United States*, 595 F.2d 1141 (9th Cir. 1979).

It is apparent that Bertelsen was an independent contractor as to the Rye Patch dam project. The United States did not have such control over the methods and employees of Bertelsen as would alter this general classification.

■ Because the Federal Tort Claims Act limits the waiver of sovereign immunity to negligent or wrongful acts or omissions of Government employees, the United States may not be held liable for the negligence of an independent contractor or the latter's employees. *Roberson v. United States*, 382 F.2d 714 (9th Cir. 1967); *McGarry v. United States*, supra. This rule holds true even though the independent contractor is working under a federal contract, maintaining property owned by the federal government or working on a project funded by the Government. *Thompson v. United States*, 592 F.2d 1104 (9th Cir. 1979). Nor can the United States be held liable on a theory of absolute liability or strict liability, even when it engages in a dangerous activity; there must be damages caused by the wrongful act (fault) of an employee of the Government while acting within the scope of his employment. 28 U.S.C. § 1346(b); *Laird v. Nelms*, 406 U.S. 797, 92 S.Ct. 1899, 32 L.Ed.2d 499 (1972); *Thompson v. United States*, supra; *McGarry v. United States*,

supra. Nevertheless, the fact that an independent contractor might have been negligent would not absolve the United States from liability under the Act if a Government employee also was negligent. Id. The complaint in the instant action alleges that plaintiff suffered injuries as a result of the negligence of the United States. It does not depend upon vicarious liability flowing from Bertelsen's negligence. "A summary judgment is proper only when there is no genuine issue of any material fact or when, viewing the evidence and the inferences which may be drawn therefrom in the light most favorable to the adverse party, the movant is clearly entitled to prevail as a matter of law." *Thompson v. United States*, supra, at 592 F.2d 1107. Since plaintiff is seeking to hold the United States liable for its own negligence, the Government may not be granted a summary judgment on the ground that it may not be held vicariously liable.

In order to hold the United States liable for negligence, it is necessary to show a duty on its part to the person injured, a breach of that duty by failure to act in accordance with the degree of care required by law, and an injury proximately resulting from that breach of duty; the primary question, then, is whether the United States had a duty to the plaintiff, for in the absence of duty a failure to act does not constitute negligence. *McGarry v. United States*, supra. The source of such duty is a matter of state law. *Aretz v. United States*, 604 F.2d 417 (5th Cir. 1979).

Plaintiff has alleged that the United States wrongfully permitted him to work under the suspended dam gate without any chaining or cribbing as required by the Bureau of Reclamation's own safety regulations. Further, a Bureau of Reclamation construction inspector was at the job site daily and a Bureau construction engineer was available. The United States also inspected the dam site every year and the dam gates four times prior to the accident. The position of plaintiff is that the United States assumed responsibility for safety inspection and negligently discharged that duty. The agreement between the United States and PCWCD as to operation of the dam, on the other hand, specifies that the United States assumes no responsibility for safety.

A volunteer may be held liable for negligence in rendering help, but the extent of the voluntary undertaking is one of fact. *Blaber v. United States*, 332 F.2d 629 (2nd Cir. 1964).

"The fact that the United States retained the right to inspect the work under construction to see that the provisions of the contract were carried out and also retained the right to stop work if they were not is not sufficient in itself to make the United States liable for damage resulting from negligence of the contractors in their performance of the contract." *Kirk v. United States*, 270 F.2d 110, at 116–117 (9th Cir. 1959). This is because the United States, in conducting inspections, is not undertaking to render services to the contractor; rather, it seeks only to protect its own interest in assuring that the contractor performs in accordance with the contract. *Roberson v. United States*, 382 F.2d 714 (9th Cir. 1967). Thus no duty arises from the inspection activities in favor of the contractor's employees. Id.; *Jeffries v. United States*, 477 F.2d 52 (9th Cir. 1973); *Thompson v. United States*, supra; *McGarry v. United States*, 370 F.Supp. 525 (D.Nev. 1973), modified on other grounds 549 F.2d 587 (9th Cir. 1976), cert. den. 434 U.S. 922, 98 S.Ct. 398, 54 L.Ed.2d 279 (1977). If the Government had such power and control over the work of the contractor and the contractor's employees that there was not in fact an "independent contractor", then a duty might run from the United States to those employees. *United States v. Page*, 350 F.2d 28 (10th Cir. 1965), cert. den. 382 U.S. 979, 86 S.Ct. 552, 15 L.Ed.2d 470 (1966); *Bramer v. United States*, 595 F.2d 1141 (9th Cir. 1979). Such was not the case here. Even if the inspections were performed negligently by the United States, it could not be held liable therefor, by reason of the absence of a legal duty. Id. Contractual agreement between the Govern-

ment and an independent contractor concerning safety rules and regulations does not have the force of law, and therefore does not give rise to a duty under state law. *McGarry v. United States*, supra.

■ Plaintiff also contends that the United States, as owner of the Rye Patch dam, breached the landowner's duty to provide a safe place of employment to workers who are invited onto the premises. Such a duty is applicable in a Federal Tort Claims Act case. *McGarry v. United States*, supra. However, *McGarry* declares that if a contract between the Government and the contractor delegates the landowner's duty to the contractor, the Government could be held liable only on a theory of faulty contractor selection or if the Government had reason to believe that the contractor was not performing safety measures required by contract. The evidence presently before the Court does not reveal what, if any, contractual agreements concerning the landowner's duty may exist between the United States and plaintiff's employer, Bertelsen. Thus, a genuine issue as to a material fact exists as to this issue.

■ Nevada law supports the proposition that an owner of property may be held liable for injuries sustained on the property by persons having no contractual relationship with the owner. For example, in *Flodin v. Verdi Lumber Co.*, 37 Nev. 294, 142 P. 531 (1914), the owner provided railroad track for use by the plaintiff's employer in performing a contract with the owner to haul lumber. A rail gave way, resulting in injury to the plaintiff, as he hauled a load of lumber. The Nevada Supreme Court applied the rule that where an owner furnishes a defective appliance, he becomes liable for the damages resulting to an employee of the contractor. It required, however, that the landowner knew or, by the exercise of ordinary care, might have known of the existence of the defect or danger. The heavy (concrete and steel) dam gate whose cables tore loose, resulting in injury to plaintiff herein, could be viewed as a defective appliance.

■ Somewhat related is the principle propounded by plaintiff that a property owner owes a duty to make sure that a contractor takes proper precautions to prevent injury to the contractor's employees engaged in extra–dangerous or extra–hazardous work on the premises. The *McGarry* case is the landmark case in Nevada as to such extra–hazardous activities. The Ninth Circuit's opinion in *McGarry*, at 549 F.2d 590, defines "extra dangerous" work as "work dangerous in the absence of special precautions." The District Court's opinion pointed out, at 370 F.Supp. 545, that ordinary work, such as painting, becomes extra–hazardous when it has to be performed within close proximity to electrical wires. The same may be said of ordinary carpentry work that must be performed beneath a suspended dam gate. Nevertheless, the latter opinion makes it clear that the Government's ownership of an inherently dangerous property or engagement in extra–hazardous activity alone does not give rise to liability. There still must be negligence or other wrongful act or omission. See also *In re Bomb Disaster at Roseville, Cal.*, 438 F.Supp. 769 (E.D.Cal.1977); *Thompson v. United States*, 592 F.2d 1104 (9th Cir. 1979); *United States v. Ure*, 225 F.2d 709 (9th Cir. 1955); *Jeffries v. United States*, 477 F.2d 52 (9th Cir. 1973).

The *McGarry* District Court opinion teaches that "if the task were an inherently dangerous one or if the Government could have reasonably foreseen danger to the workman, then the Government would have had a duty to exercise some control over its independent contractor and the Government's right of inspection would be a method for exercising this control." 370 F.Supp. at 545.

■ The standard of care called for in *McGarry* is that commensurate with the risk involved. There is evidence in connection with the instant motion for summary judgment that the placement of railroad ties or other cribbing or chaining was reasonably called for in the circumstance of plaintiff's having to work under the suspended dam gate. Whether this is so is not

being here decided. What is being emphasized is that *McGarry* imposes a requirement upon the owner, when the work is extra–hazardous, to set up a procedure so that the owner will be made aware of when such work is being performed and, in addition, the requirement to make sure that the contractor is utilizing adequate safety measures. The Ninth Circuit specifically affirmed this holding of the District Court. 549 F.2d 590–591. The United States contends that plaintiff was not engaged in extra-hazardous work such as contemplated by *McGarry*, so that the case is inapplicable. Further, the Government distinguishes *McGarry* as not involving the "principal contractor" defense it has raised herein (which will be discussed below). In any event, as to the issues covered by *McGarry*, the United States is not entitled to a summary judgment as a matter of law.

The Government forcefully argues that it is immune from this civil action for damages and plaintiff is limited to workmen's compensation benefits because the United States was the "principal contractor" on the Rye Patch dam project. Nevada Revised Statutes (NRS) sec. 616.085 declares that subcontractors and their employees shall be deemed to be employees of the principal contractor. Further, NRS sec. 616.115 provides that independent contractors are included in the term "subcontractors". NRS secs. 616.270 and 616.370 make workmen's compensation benefits exclusive to an injured worker covered by the Nevada Industrial Insurance Act, in that the worker's employer may not be held liable for damages. Therefore, the Government contends, plaintiff, an employee of Bertelsen, which was a subcontractor to the United States, which was the principal contractor, may not recover from the United States because of the statutory employer–employee relationship between the United States and plaintiff.

The burden of establishing such a defense to common law liability rests upon the United States, as the party moving for summary judgment. See *Weaver v. Shell Oil Company*, 91 Nev. 324, 535 P.2d 787 (1975); *Alsup v. E. T. Legg & Co.*, 94 Nev. 297, 579 P.2d 769 (1978). Although Nevada statute does not define "principal contractor", the State's Supreme Court has found such a status to exist in a number of cases.

In *Simon Service Incorporated v. Mitchell*, 73 Nev. 9, 307 P.2d 110 (1957), the property owner itself hired two carpenters and a construction engineer. It also entered into separate contracts for the performance of plumbing, sheet metal, wiring, painting and plastering work. The Court found that the owner was the "principal contractor". It chose to follow a Connecticut case that had held where an owner chooses to retain in his own hands the business of erecting a building and parcels out fractions of the construction work among separate contractors (each responsible solely to the owner), the owner is a principal contractor or principal employer.

Three years later, the Nevada Supreme Court held that the factory owner was a "principal contractor" in *Titanium Metals Corp. of Amer. v. Eighth Jud. Dist. Ct.*, 76 Nev. 72, 349 P.2d 444 (1960). The owner entered into a contract with Guy F. Atkinson Company whereby Atkinson supplied design, engineering, and materials in connection with the owner's plant expansion. The owner was empowered to determine the scope of the work, to make changes and to add or omit work. Forty–six percent of the project was done by Atkinson; the other fifty–four percent was provided by the owner through its own employees and a subcontract for brick work.

Somewhat different factors were involved in *Hosvepian v. Hilton Hotels Corporation*, 94 Nev. 768, 587 P.2d 1313 (1978). There, the owner contracted directly with numerous subcontractors, no one of which performed more than twenty percent of the work on the project. The owner retained general supervisory control over the progress of work and the purchase of materials. In addition, the evidence showed that the owner retained and exercised control of the details of the work. At 587 P.2d 1315, the opinion holds: "Since uncontroverted facts in the record demonstrate that respon-

dent performed the function of principal contractor, including the exercise of supervisory control over the work on the project, respondent was entitled to summary judgment . . . ."

Finally, the Nevada Supreme Court found "principal contractor" status to exist in *Whitley v. Jake's Crane & Rigging, Inc.*, 95 Nev. 819, 603 P.2d 689 (1979). There, the plaintiff was employed by Westinghouse, but was injured by a crane owned and operated by Jake's. Both Westinghouse and Jake's were subcontractors of Southern California Edison (Edison). The plaintiff recovered workmen's compensation benefits under the policy of his employer, Westinghouse. He then commenced a tort action against Jake's. The Court states at 603 P.2d 690:

"The record before this court shows that Edison entered into two contracts regarding certain equipment it owned and was storing in Las Vegas, Nevada. Pursuant to the first contract, Jake's unloaded and stored this equipment on its premises. Under the terms of the second contract, Westinghouse supplied technical direction, clerical support and casual laborers in the unloading and storing process. An employee of Edison was at all times present in the unloading yard to monitor the work.

"These facts demonstrate that Edison performed the function of principal employer, including the exercise of supervisory control over the work on the project."

The plaintiff was limited to the Nevada Industrial Insurance Act as his sole remedy.

In *Snow v. United States*, 479 F.Supp. 936 (D.Nev.1979), the opinion points out that under the contract between the United States and an independent contractor, the Government had the right to stop all work if the contractor failed to enforce safety regulations. The Court held that this constituted retention by the United States (the landowner) of a degree of control over the activities of the contractor. In turn, the opinion concludes, as a matter of law, the Government was a "principal contractor".

The evidence before the Court in deciding the instant motion for summary judgment shows:

(a) The United States Bureau of Reclamation designed, planned and formulated the specifications for the Rye Patch dam project;

(b) A Bureau of Reclamation construction inspector was on the job daily to assure that Bertelsen was following Government specifications during construction;

(c) A Bureau of Reclamation construction engineer was available to assure that the Government was getting a quality job that met the specifications;

(d) Extraordinary tasks, such as blasting, required prior Bureau of Reclamation approval;

(e) Approximately 21.9% of the total expenditures on the project were spent by the United States in connection with the designing, planning, formulating of specifications, and inspecting of the construction work;

(f) Approximately 6.7% of the total expenditures went to PCWCD for work performed in protecting upstream lands from the increase in elevation of the water behind the dam; this included riprapping, building a culvert, moving a garage and relocating a bridge;

(g) Approximately 71.4% of the total expenditures went to Bertelsen for its work in performing its contract with the Government; and

(h) The United States retained some right of control over Bertelsen's work, including the right to suspend or terminate the work and finish the job itself under certain conditions.

 Accordingly, the United States has established that it was a "principal contractor" within the intendment of the Nevada Industrial Insurance Act. As such, it is immune from common law tort liability in a suit brought by an independent contractor's employee. The United States is entitled to a summary judgment dismissing the plaintiff's complaint against it.

This Order shall constitute the Court's Findings of Fact and Conclusions of Law.

Summary Judgment shall be entered concurrently herewith.