429 F.2d 1072
 Gale S. GILL, Individually and as Guardian of her Minor Children,
and
Louis B. Barlow, Individually and as Guardian of her Minor
Children, Plaintiffs-Appellees,
v.
UNITED STATES of America, Defendant and Third-Party
Plaintiff-Appellant,
v.
Ann H. BINTLIFF, as Executrix of the Estate of Charles V.
Bintliff, Third-Party Defendant-Appellee.
 No. 26900.
 United States Court of Appeals, Fifth Circuit.
 June 1, 1970.
As Amended June 22, 1970.
As Amended Aug. 5, 1970.
 
 Richard Brooks Harden, U.S. Atty., Tyler, Tex., William Kanter, John C. Eldridge, Robert V. Zener, Daniel Joseph, Attys., Dept. of Justice, Civil Div., Washington, D.C., for appellant.
 J. R. Hubbard, Texarkana, Tex., for Gill.
 Bun L. Hutchinson, Victor Hlavinka, Texarkana, Tex., for Barlow.
 John D. Raffaelli, Texarkana, Tex., for Bintliff.
 Before RIVES, GOLDBERG and GODBOLD, Circuit Judges.
 GODBOLD, Circuit Judge:
 
 
 1
 This is an appeal from a Federal Tort Claims Act[1] judgment for the death of two passengers killed in the crash of a light, private airplane at Easterwood Airport, College Station, Texas. The case was tried without a jury and resulted in a verdict of $842,815 against the United States. Liability was based on findings that the crash was caused by extremely hazardous weather conditions at Easterwood Airport and that the government, through negligent weather reporting by its Federal Aviation Administration facilities, was responsible for placing the plane in a position of peril, which was the proximate cause of the deaths.
 
 
 2
 The issues on this appeal concern negligence of the government, proximate causation, contributory negligence of the pilot, whether the government was entitled to contribution from the estate of the pilot, and whether the District Court was required to credit against the judgment $120,000 paid to plaintiffs in state court settlements by the estate of the pilot.
 
 
 3
 We affirm in part and reverse and remand in part.
 
 
 4
 The factual issues are not simple. Many of the questions before us arise from absence of clear-cut findings and from differences of opinion about what the District Court did and did not find. In turn these spring from the entry of findings of fact in the form of a generalized narrative statement, rather than by precisely targeted findings not subject to misunderstanding.
 
 
 5
 The aircraft concerned was piloted by Dr. Charles Bintliff on a flight from Texarkana, Texas to San Antonio. Gill and Barlow were passengers. Dr. Bintliff was licensed to fly only by Visual Flight Rules (VFR) which permitted him to fly only under prescribed conditions.[2] He did not have an instrument rating. He filed a VFR flight plan at Texarkana and took off from there at 4:18 p.m. He flew a route generally southwesterly in the direction of Longview-Waco-Austin-San Antonio. Before getting into difficulty he talked in flight with FAA facilities at Longview, Waco and Austin. After seeking to reach the Austin area, he turned east and, after numerous efforts to find a haven from the bad weather in which he found himself, crashed at College Station at approximately 8:00 p.m.
 
 1. Negligence
 
 6
 The District Court concluded that the government was negligent in furnishing to the plane, by Waco RAPCON (radar approach control), an FAA facility, in-flight weather information which was inexact, incomplete and in all reasonable probability misleading.[3]
 
 
 7
 The District Court correctly found that there was a duty of the government to those in the plane. The finding that the government was negligent by breach of that duty is not plainly erroneous, Fed.R.Civ.P. 52(a).
 
 
 8
 Under the Federal Tort Claims Act the liability of the United States for negligence must be determined in accordance with the law of the state where the asserted negligence occurred. 28 U.S.C. 1346(b); Richards v. United States, 369 U.S. 1, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962). While principles of Texas law control, federal regulations may impose duties and standards of conduct upon the actors. United States v. Schultetus, 277 F.2d 322, 326 (5th Cir.), cert. den. 364 U.S. 828, 81 S.Ct. 67, 5 L.Ed.2d 56 (1960) (FAA regulations).
 
 
 9
 The United States may be liable under the Federal Tort Claims Act for negligent provision of services upon which the public has come to rely. Indian Towing Co. v. United States, 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955). The government's duty to provide services with due care to airplane pilots may rest either upon the requirements of procedures manuals spelling out the functions of its air traffic controllers or upon general pilot reliance on the government for a given service, Hartz v. United States, 387 F.2d 870 (5th Cir. 1968). That duty, in appropriate circumstances, requires due care in providing both current weather information, Ingham v. Eastern Air Lines, 373 F.2d 227 (2d Cir. 1967), and weather forecasts, Somlo v. United States, 274 F.Supp. 827 (N.D.Ill.1967).
 
 
 10
 A Federal Aviation Agency Manual, ATP 7110.1A, spells out the controllers' bad-weather function:
 
 
 11
 352.1 Whenever storm areas such as apparent thunderstorms, rain showers, or squall lines can be discerned on the radar display, information concerning them shall be provided to pilots when considered advisable by the controller. When workload permits, the controller should volunteer vectoring service to assist the pilot to avoid such areas, or provide such service when requested by the pilot.
 
 
 12
 A government publication, titled 'ATS Manual,' 112, lists one of the controllers' functions as 'coordination with other individuals in regard to transfer of information,' and provides,
 
 
 13
 The functions of (RAPCON) include: * * * furnishing to pilots information concerning * * * weather conditions * * * and other information which may be of assistance to the pilot.
 
 
 14
 Government personnel manuals, GS-2152-8 and GS-2152-9, specify the following duties of the air traffic controllers:
 
 
 15
 Interpreting and adapting the latest weather information for the specific flight in addition to providing current and forecast weather at origination, along route, and at destination. As necessary, suggesting appropriate flight routes and levels and alternate routes or destinations, such suggestions being based upon consideration of weather, operating characteristics of the aircraft, navigation aids, terrain, etc.
 
 
 16
 The specifications of these manuals establish that the government has undertaken not only to provide weather services to pilots but also to suggest as necessary appropriate action to avoid storm areas. The Waco RAPCON controller who spoke to Bintliff agreed in testifying that 'actually posing a route of flight or suggesting one is one of (my) functions as a control man.' Once he undertook to inform Bintliff, the government became liable for negligent furnishing of information. Somlo v. United States, supra.
 
 
 17
 There is little doubt that Waco RAPCON, in relaying to the plane weather data which it had secured from the FAA controller in Austin, gave an inexact and incomplete version. Austin described to Waco a 'solid' east-west weather front extending 'from Liberty Hill clear on over east of Taylor * * * east of Taylor way east of Taylor.' From Austin to Waco is a route generally south-southwest and passing just to the east of Taylor. Liberty Hill is west of Taylor. Thus the plane's route would take it into the front as described by Austin. But Waco relayed the description as 'numerous cells extending from Liberty Hill (eastward) to Taylor.' This was erroneous in description of the eastern terminus of the front and erroneous in the nature of the front.
 
 
 18
 The Austin controller who used the language 'solid line' gave the following definitions:
 
 
 19
 'Numerous cells': 'It would not necessarily have to be anywhere close to a direct line. They could be scattered; they could be clustered in groups.' 'Solid line of cells': 'A line of precipitation returned on the radarscope. That could either be thunderstorms or precipitation, and if there were cells, they could have spaces in between; small spaces, large spaces, but if it describes more or less a solid line, you would consider the small spaces not very dependable for navigational purposes, or vectoring or anything else.'
 
 
 20
 A government witness, while maintaining there was not a great difference in the two transmissions, conceded that 'a solid line is always numerous cells, but numerous cells are not always a solid line.'
 
 
 21
 Expert testimony characterized the Austin-Waco message as covering a large area and the Waco-pilot transmission as describing a relatively small area, a difference said by an expert to be significant. An expert witness testified that the Waco-pilot transmission was not a 'fair relay' of the message received from Austin and that it told 'a different weather story.'
 
 
 22
 The pilot had discussed with the Waco controller his proposed route, which would take him just east of Taylor. The controller, after relaying the data from Austin, advised the pilot that he should not fly west because this would take him into heavier weather and spoke of the pilot's suggested route passing just east of Taylor as being 'about the only way that it appears you would be able to get around it (the bad weather).'
 
 
 23
 Indisputably, Austin told Waco, 'I'd suggest he land at Waco and wait a couple of hours.' That warning was not conveyed by Waco to the pilot. The government urges that FAA operators have no authority to require or duty to persuade a pilot to land. We need not decide whether the Waco controller was required to relay to the pilot the specific advice to land, as a part of the weather information received by him, because in any event the advice, as part of the overall message, helped to convey to Waco RAPCON notice of the severity of adverse weather conditions the nature and location of which were not passed along accurately to the pilot.
 
 
 24
 Immediately following the Waco-plane transmission, Waco and Austin talked again and agreed that the pilot was 'nuts' to try to get into Austin, a shared sense of weather peril which, as the expert testimony indicated, simply had not been communicated by Waco's relay of information to the pilot.
 
 
 25
 The government urges that the holdings of the District Court violate the principle that the pilot is responsible for the safe operation of the aircraft and disregard the fact that the FAA controllers could not require the pilot to land or to follow a particular route.[4] Whether the controller can require the pilot to land is tangential, if relevant at all, to the government's duty to furnish accurately weather information in its possession once it has undertaken to supply such information.
 
 
 26
 This Circuit has considered before the interplay of the government's duty to warn and the pilot's duty to fly his aircraft safely. In Hartz v. United States, supra, a wing tip vortex case, we held that the government had a superior duty to warn because of both the controller's better physical position for observation and his experience in judging the extent of peril to small planes taking off in the turbulent wake of larger planes. In United States v. Schultetus, supra, a student pilot was making a simulated instrument landing while his vision was intentionally blocked but his instructor's vision remained unobscured. The attempted landing was unsuccessful. The student pilot pulled up and during his ascent collided with another plane in good visibility conditions. The government's alleged duty to warn of the presence of the other plane was held an insufficient basis for liability in view of the superior duty upon the pilot to control his own airplane in such a way as to avoid visible hazards when flying VFR. The case before us falls within Hartz. A hotly contested issue below was whether Bintliff, in talking with the Longview operator before he reached the Waco area, had received weather information which revealed bad weather over substantial areas ahead. We are not clear as to the District Court's conclusions on this disputed question. But, assuming that the pilot did receive the information, the possession of it would not excuse a subsequent breach of duty by the Waco controller possessed of greater experience, superior observation facilities, and localized information, as the pilot approached closer to the area of possible bad weather and requested localized and more current information. In Schultetus the hazard was visible to those in the plane. Bintliff was asking about weather in an area ahead that he had not reached. The government contends that, even if the Waco controller failed to fully convey the danger of what was reported to him by the Austin controller, Waco's report to the pilot nevertheless was sufficient to portray a situation of danger. This argument is disposed of by the District Court's findings, amply supported by evidence, that the relay of information was inexact, incomplete and in all probability misleading.
 
 2. Proximate Cause
 
 27
 The District Court's finding of proximate causation is not plainly erroneous.
 
 
 28
 As discussed above, according to evidence which the court was entitled to accept, both the severity and location of the bad weather were misdescribed by Waco. Waco suggested to the pilot that if he was unable to get through on the proposed route he could return to Waco. As the plane came closer to Austin Bintliff talked with the controller there and was given a suggested route to follow to Austin which would require him to go east of Taylor to the area of Rockdale and then turn southwesterly toward Austin, a more easterly run 'around left end' than the Waco controller had discussed. The evidence is contradictory as to whether this report too was erroneous in failing to accurately portray the weather along the route suggested. This issue was not decided by the District Court. However, the court was entitled to infer that the pilot was unable to get through. He was approaching Austin, which he was seeking to reach. He was in an area of generalized bad weather, which was moving eastward as he sought to skirt it to the east. No other reason appears for his turning away from austin and going further east than Rockdale to the College Station area. Within minutes after his last conversation with Austin the pilot was calling 'in the blind' to any airport that might receive his call. None answered. A few minutes later he called, and reached, Easterwood Airport at College Station. That facility advised him that to get to Austin 'you would be flying right down the length of the squall line or problem area.' Easterwood sought unsuccessfully to get the plane safely down at some other available, lighted field in the College Station area. A succession of difficulties followed, but finally all appeared to be surmounted except the weather itself. As the plane approached Easterwood to attempt to land, in a violent thunderstorm, it went down in the rough approach area off the end of the runway. None aboard survived. There is no evidence of mechanical failure.
 
 
 29
 Once the light plane, with a VFR pilot at the controls, was exposed to the improperly described and located bad weather, the fact that in the urgencies of the situation the pilot did not seek a safe haven in the one manner earlier suggested by the Waco controller as a possibility did not interrupt the causal relationship. See Porter v. Puryear, 153 Tex. 82, 262 S.W.2d 933, 936-937 (1953). There is no evidence that the plane ever reached a position of safety in an area of good weather conditions before trying to land at Easterwood or that after turning further east from the attempt to get to Austin via Taylor the pilot ever took any independent, intervening act that was for any purpose other than to get out of the stormy skies and safely on the ground.
 
 3. Damages
 
 30
 Under Texas law if the pilot was a joint tortfeasor the settlement with his estate by the plaintiffs entitled the government to a reduction of the judgment against it by one-half. Palestine Contractors, Inc. v. Perkins,386 S.W.2d 764 (Tex.1964). The District Court made no specific finding on whether Bintliff was negligent. The appellees stand on the finding of the trial judge that 'the defendant through negligent weather reporting was responsible for placing Dr. Bintliff and his passengers in this perilous position which was the proximate cause of their death', and on the Texas rule that a finding that a cause is 'the proximate cause' means it is the sole efficient cause and excludes all other causes. Fort Worth & D.C. Ry. v. Burton, 158 S.W.2d 601 (Tex.Civ.App.1942); Blakesley v. Kircher, 41 S.W.2d 53 (Tex.Comm.App.1931); 40 Tex.Jur.2d Negligence 23 at 482 (1962). We are not willing in this case to create the significant consequences that would ensue by gambling on the unexpressed state of mind of the District Judge and the difference between a 'a' and a 'the.' In reaching this conclusion we consider that the government's claim of pilot negligence is based in part on its evidence that he received the earlier weather information from the Longview operator, an issue not clearly disposed of below. The government is not correct that the evidence shows negligence by the pilot as a matter of law, which would require a finding by this court that the judgment must be halved. Pilot negligence is for the District Court to consider and to make findings thereon.[5]
 
 
 31
 On the other hand, if on remand the court finds the pilot was not guilty of negligence proximately contributing to the accident, there will come into play the separate principle that an injured party is entitled to but one satisfaction for a single injury, so that an amount received in settlement from one alleged tortfeasor must be applied as a credit reducing the amount to be recovered against other defendants. McMullen v. Coleman, 135 S.W.2d 776, 778 (Tex.Civ.App.1940). In that event the government will be entitled to have the judgment against it reduced by the sum of $120,000 paid by the estate of the pilot in settlements. The appellees do not seriously contend otherwise.
 
 
 32
 Affirmed in part, reversed in part and remanded for further proceedings not inconsistent with this opinion. The costs shall be equally divided, one-half against the government, and one-half against Gale S. Gill, Individually and as Guardian of her Minor Children, and Louise B. Barlow, Individually and as Guardian of her Minor Children.
 
 
 
 [1]
 28 U.S.C. 1346(b), 2671 et seq
 
 
 [2]
 See 14 C.F.R. 60.30 (1963), currently amended as 14 C.F.R. 91.105 (1969)
 
 
 [3]
 The District Court discussed what it termed 'apparent approval' by the Waco controller of the route of continued flight which the pilot suggested he would follow, but made no clearly identifiable findings on whether the controller did concur or on whether this breached any duty owed by the government. We need not reach this issue because of our decision on the issue of negligent furnishing of data by Waco
 
 
 [4]
 The regulations, 14 C.F.R. 60.2 (1963) provided:
 'The pilot in command of the aircraft shall be directly responsible for its operation and shall have final authority as to operation of the aircraft.'
 The corresponding provisions now in effect appear at 14 C.F.R. 91.3 (1969).
 
 
 [5]
 See Neff v. United States, 420 F.2d 115 (D.C.Cir.1969), for discussion of pilot negligence under severe weather conditions