Paul **DAVIS**, **Jr.**, Administrator of the
Estate of Richard Davis,
Deceased, Plaintiff,

v.

**UNITED STATES of America,**
**Defendant.**

**No. CV73–L–245.**

United States District Court,
D. Nebraska.

June 4, 1975.

Richard H. Williams, Lincoln, Neb., for plaintiff.

Daniel E. Wherry, Asst. U. S. Atty., James P. Klapps, Trial Atty., U. S. Dept. of Justice, Washington, D. C., for defendant.

## MEMORANDUM ON MOTION FOR DISMISSAL OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT.

URBOM, Chief Judge.

The plaintiff presses a claim against the United States for failure of an Occupational Safety and Health Administration compliance officer to follow up a safety violation citation regarding a trench on a construction site at which the employer of the plaintiff's decedent was installing a sewer line in Omaha, Nebraska, on June 8, 1972.

This court previously declined to dismiss for failure to state a claim on which relief could be granted, pointing out that facts then apparent were too sparse to enable a clear determination. Many more facts are now discernible.

A pretrial order filed November 4, 1974, filing 34, includes stipulated facts as follows:

On June 8, 1972, Robert Bruno, compliance officer for the Occupational Safety and Health Administration of the United States Department of Labor, in his official capacity made an on-site inspection of a construction project site at about 153rd and Center Streets, Omaha, Nebraska, at which Turcon, Inc. was the contractor. During the entire month of June, 1972, the said Robert Bruno was employed by the United States of America in the capacity of compliance officer of the Occupational Safety and Health Administration of the United States Department of Labor for an area which included Omaha, Nebraska. As a result of the inspection of June 8, 1972, the Occupational Safety and Health Administration issued a "Citation for Serious Violation," together with a "Citation Cover Letter," which citation and cover letter were mailed on June 9, 1972, to and received by Charles Turner, president of Turcon, Inc. on June 12, 1972. On June 8, 1972, compliance officer Robert Bruno did not make a request of Turcon to close the trench to further occupancy or use. He did not issue an "imminent danger" citation. Between the dates of June 8, 1972, until June 28, 1972, compliance officer Bruno did not make a follow-up inspection of the construction site, nor did anyone at his direction or command make such a follow-up inspection. Neither did any other official of the Occupational Safety and Health Administration make such follow-up inspection. The findings cited in the Citation for Serious Violation were that:

"Employees were exposed in a trench eight or more feet in depth, sides of which were composed of unstable material. Sides of trench were not sloped, shored, sheeted, or braced, nor was excavated material removed to a safety distance from

opening of trench. Ladders shall be provided for means of exit in all trenches three feet deep or more. In excavations that employees are required to enter, the spoil pile shall be at least two feet from the edge of the excavation, for employee protection."

The citation specified that the violations must be corrected "immediately."

On the date of inspection, there were no ladders provided at the area of inspection and the spoil pile was immediately at the edge of the trench and piled eight to ten feet high. On June 28, 1972, plaintiff's decedent, Richard Davis, was killed when the sides of a trench at the same project site as the trench described in the Citation for Serious Violation collapsed on him. The proximate cause of death was the caving in of the trench caused by the giving away of the unstable soil on its sides. Decedent was at such time a common laborer whose job included working in the trenches at the project site. The United States Department of Labor has promulgated rules and regulations which were first published in the Federal Register on April 17, 1971, which rules and regulations, as amended from time to time, were in full force and effect during the month of June, 1972. The Secretary of Labor also published administrative procedures and policy guidelines for OSHA personnel in a Compliance Operations Manual dated November 15, 1971.

A deposition of Robert Bruno, the compliance officer, also is before the court. Testimony in it is not at odds with the stipulated facts in the pretrial order.

Jurisdiction is asserted solely upon the Federal Tort Claims Act, 28 U.S.C. § 1346(b), which declares:

" . . . [T]he District Courts . . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages . . . for . . . death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, *under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."* (Emphasis added)

■ It is the italicized language which must be addressed regarding the jurisdictional issue. Even though the motion now before the court is not phrased in jurisdictional terms, except with respect to a "discretionary function" exception to the Federal Tort Claims Act · found in 28 U.S.C. § 2680(a), the issue of whether the United States, if it were a private person, would be liable in accordance with Nebraska law, is nevertheless before the court, as are all subject matter jurisdictional issues which inhere in the Federal Tort Claims Act by the plaintiff's reliance upon that Act.

■ Two sources of duty arguably can be pointed to. One is the common law of Nebraska; the other, the Occupational Safety and Health Act of 1970, 29 U.S.C. §§ 651–678 (OSHA). However, the Federal Tort Claims Act specifically limits its application to those instances in which "the law of the place where the act or omission occurred" places liability upon the claimed wrongdoer. Unless the law of Nebraska would declare liability —including a duty—upon a private person in the same circumstances, no jurisdiction lies in this court.

■■ I find no indication that any law permits Nebraska to place upon private persons the duties cast upon federal officers by OSHA. The Act's thrust is to require designated federal officers to investigate, issue citations, and apply for enforcement orders by a federal court. Nothing resembling those duties devolves on a private person under OSHA. In United States v. Smith, 324 F.2d 622 (C.A. 5th Cir. 1963), Chief

Judge Tuttle analyzed a claim that the United States was liable to subcontractors for failure of government contracting officers to require a prime contractor to provide a payment bond as mandated by the Miller Act, 40 U.S.C. § 270a. For the court he said:

"The existence or nonexistence of a claim by a laborer or materialman under a Government contract depends entirely upon Federal statute. There being no possibility of such a situation being construed by state law, the attempt to vindicate such right, it seems clear, cannot bring it within the ambit of the tort claims law language which says .in effect that the United States may be sued for certain negligent conduct if such negligent conduct perpetrated by a private person would give rise to the claimant under state law. . . ."

Exactly the same approach was taken by the courts in Devlin Lumber and Supply Corporation v. United States, 488 F.2d 88 (C.A. 4th Cir. 1973), and Baker v. F & F Investment Company, 489 F.2d 829, 835 (C.A. 7th Cir. 1973). The latter court said:

"... Since the complaint is based exclusively on federal law, the FTCA [Federal Tort Claims Act] is inapplicable."

To the extent that the complaint in the case at bar is rooted in federal law as a source of duties of the United States or its compliance officer, it must fall.

■■ As to the common law or statutory law of Nebraska, the plaintiff has alluded to nothing other than the cases of Hickman v. Parks Construction Company, 162 Neb. 461, 76 N.W.2d 403 (1956); Colvin v. Powell & Company, Inc., 163 Neb. 112, 77 N.W.2d 900 (1956), and McDonnell v. Wasenmiller, 74 F.2d 320 (C.A. 8th Cir. 1934), based upon Nebraska common law.

The *Hickman* case declares:

"The general rule, which governs where a party *is responsible for a dangerous place . . . or operation* likely to cause injury . . . to persons . . . rightfully in its proximity, is that he is charged with the duty of taking due and suitable precautions to avoid injuries . . . to such persons . . . and his failure to take such precautions constitutes negligence. . . -.

"This rule applied to excavations requires a contractor making an excavation on property of another to provide such protection as would guard persons rightfully on the property against any contingency that was reasonably to be anticipated. . . ." (Emphasis added)

The *Hickman* case involved the duties of a contractor who had agreed to perform and had performed an excavation.

Colvin v. Powell & Company, Inc., supra, recited a similar rule regarding suppliers of chattels. McDonnell v. Wasenmiller, supra, dealt with the liability of one who by contract had expressly accepted the responsibility of supervising an entire project of construction.

These three cases recognize a duty upon persons who own or who are in control of an operation which may be dangerous to take suitable precautions to protect people who may be anticipated to be rightfully on the premises. But here the federal compliance officer was not in control, either actually, contractually, or otherwise. He performed inspection duties solely because of the federal laws and cannot be said by the common law of Nebraska to have been "responsible" for or in "control" of the project.

Other cases relied upon by the plaintiff do not involve Nebraska law. Thorne v. United States, 479 F.2d 804 (C.A. 9th Cir. 1973), and Emelwon, Inc. v. United States, 391 F.2d 9 (C.A. 5th Cir. 1968), are further distinguishable because the projects involved were government projects, so that the government stood in the position of owner or possessor. So, also, with Indian Towing Co., Inc. v. United States, 350 U.S. 61,

76 S.Ct. 122, 100 L.Ed. 48 (1955), wherein the United States operated a light house, and Rayonier v. United States, 352 U.S. 315, 77 S.Ct. 374, 1 L. Ed.2d 354 (1957), in which the United States Forest Service was contractually obligated and actually undertook to exercise exclusive direction and control of all fire suppression activities on the federal land where a fire occurred.

Rogers v. United States, 397 F.2d 12 (C.A. 4th Cir. 1968), is somewhat different from the others cited, but even there it must be acknowledged that the operation of maintaining a federal prisoner was entirely that of the United States marshal by virtue of a court order. The United States, therefore, could be said to be in control of the prisoner's safekeeping. Even then, the appellate court did not declare that the marshal had a duty toward the prisoner but remanded the case for development of the facts to determine whether there was a duty and, if so, whether a breach had occurred.

Toppi v. United States, 327 F.Supp. 1277 (U.S.D.C.E.D.Pa.1971), states that a viable claim may arise by a government inspector's failure to make a careful inspection once the inspection is undertaken.[1] I disagree with that case to the extent that it can be said to hold that the United States may be liable for negligent inspection if the government inspector's reason for undertaking the inspection is the duty to do so under federal law. Such a holding would equate duty under state law with duty under federal law, which appears not at all to be the intention of the Federal Tort Claims Act, as pointed out earlier in this memorandum.

The evidence before me leaves no factual issue in dispute as to jurisdiction. The project involved was not a federal government project; the federal government in the person of the compliance officer was not in control or possession of the work site and no relationship by contract or otherwise between the project and the federal government existed which would place the government in the position of one responsible for the project under Nebraska law.

Accordingly, there is no jurisdiction in this court under the Federal Tort Claims Act and the action must be dismissed. This is consistent with Jeffries v. United States, 477 F.2d 52 (C.A. 9th Cir. 1973); Roberson v. United States, 382 F.2d 714 (C.A. 9th Cir. 1967); Craghead v. United States, 423 F.2d 664 (C.A. 10th Cir. 1970), and Fisher v. United States, 441 F.2d 1288 (C.A. 3rd Cir. 1971).

---

1. On trial the court denied recovery on the factual conclusion that the inspector had not undertaken an inspection or duty to inspect.

Toppi v. United States, 332 F.Supp. 513 (U.S.D.C.E.D.Pa.1971).