UNITED SCOTTISH INSURANCE COMPANY et al., Plaintiff-Appellee,

v.

UNITED STATES of America, Defendant-Appellant.

Kathleen M. FLEMING et al., Plaintiff-Appellee,

v.

UNITED STATES of America, Defendant-Appellant.

Simone C. WEAVER et al., Plaintiff-Appellee,

v.

UNITED STATES of America, Defendant-Appellant.

John William DOWDLE, Jr., Plaintiff-Appellee,

v.

UNITED STATES of America, Defendant-Appellant.

Maxine CEARLEY et al., Plaintiff-Appellee,

v.

UNITED STATES of America, Defendant-Appellant.

Nos. 76–2813 to 76–2817.

United States Court of Appeals, Ninth Circuit.

Nov. 29, 1979.

Rehearing Denied Feb. 11, 1980.

Richard F. Gerry, Casey, Gerry, Casey & Westbrook, San Diego, Cal., argued for plaintiffs-appellees; James H. Miller, Greer, Popko, Cornblum & Miller, San Diego, Cal., on the brief.

Before HUFSTEDLER and WALLACE, Circuit Judges, and WHELAN,* District Judge.

WALLACE, Circuit Judge:

The government appeals from a district court judgment awarding damages in an action brought against it pursuant to the Federal Tort Claims Act (the Act), 28 U.S.C. §§ 1346(b), 2671–80, alleging that the Federal Aviation Administration (FAA) negligently inspected an aircraft which subsequently crashed. The government contends, among other things, that the Act does not provide for liability in this type of case. Because we conclude that the district judge neglected to make findings which are a prerequisite to liability pursuant to the Act under the circumstances of this case, we reverse and remand for further proceedings.

I

The consolidated actions that constitute this appeal arose out of an air crash which occurred on October 8, 1968, at McCarran Field at Las Vegas, Nevada. All four occupants of the aircraft, the pilot, co-pilot, and two passengers, were killed in the disaster. The plaintiffs in the district court, appellees here, are Dowdle, owner and operator of the air taxi service; Catalina-Vegas Airlines, that operated the ill-fated aircraft; the Weavers, widow and children of co-pilot Vernon Weaver; the Cearleys, widow and children of passenger Charles Cearley; the Flemings, children of passenger Katherine Fleming; and a number of insurance companies which provided liability coverage to Dowdle.

Joseph T. Cook, Asst. U. S. Atty., Torts Section, Washington, D.C., for United States.

* Honorable Francis C. Whelan, United States District Judge, Central District of California, sitting by designation.

In July and August 1965, Aerodyne Engineering Corporation of Dallas, Texas, pursuant to the request of Air Wisconsin, an air taxi operator in Wisconsin, installed gasoline fueled heaters in two of Air Wisconsin's aircraft. Both were DeHavilland Doves. The aircraft that eventually was to crash bore United States registration No. N4040B (40B), and her sister craft bore United States registration No. N4041B (41B).

FAA regulations, 14 C.F.R. Part 21.E, required that Aerodyne acquire a Supplemental Type Certificate (STC) from the FAA for this type of installation. The parties agree that FAA regulations also required that the FAA inspect the installation prior to giving its approval for issuance of the STC. The FAA issued the STC, and the aircraft were returned to Air Wisconsin for service.

Dowdle purchased both 40B and 41B from Air Wisconsin during the winter of 1966–67. He evidently used them in various air taxi operations, and during that time, both aircraft underwent numerous annual and 100 hour inspections until October 8, 1968, when 40B crashed.

The district court found the United States liable to all plaintiffs on the basis that the FAA had negligently inspected the aircraft in 1965 prior to issuance of the STC, and that this negligent inspection proximately caused the in-flight fire aboard and crash of 40B, and thus the damages suffered by all plaintiffs.

The government asserts a number of errors, each of which it claims requires reversal of either some or all of the district court's judgment. First, the government reminds us that the Act gives district courts jurisdiction to award damages against the government only when a private individual could be held liable pursuant to state law in like circumstances. *See, e. g., Thompson v.*

*United States,* 592 F.2d 1104, 1107 (9th Cir. 1979); 28 U.S.C. § 1346(b).[1] The government asserts that the violation of FAA regulations cannot serve as a basis for liability where the United States' role is simply in the nature of a safety inspection and approval because there is no analogous "private person" liability for such activity. The government's second argument, which also raises a jurisdictional question, is that the plaintiffs are asserting a "claim arising out of . . . misrepresentation," thus falling within the exception to section 1346(b) jurisdiction established in 28 U.S.C. § 2680(h). Finally, the government asserts that the district court was clearly erroneous when it (a) failed to find contributory negligence as to the claim of Dowdle and the subrogation claims of the insurance companies; and (b) found that the defective fuel line to the combustion heater in 40B proximately caused the crash. Because of our resolution of the government's first contention, we do not reach the other issues that the government tenders for our decision.

## II

The government asserts a number of grounds for its belief that the district judge incorrectly found that the regulations in question could serve as the basis for liability. First, it contends that the sole authority relied upon by the district court for this proposition, *Arney v. United States,* 479 F.2d 653 (9th Cir. 1973), addresses this question in dicta only and, in any event, should not be relied upon. The government observes that *Arney* arose in admiralty and is not definitive on the question of liability pursuant to the Act. In addition, the government suggests that relevant authority both inside and outside of this circuit runs contrary to the approach taken in *Arney*, and that we should therefore overrule that case.

---

1. 28 U.S.C. § 1346(b) limits district court jurisdiction to actions for damages arising out of "injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government . . . under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." *See also* 28 U.S.C. § 2674, which states in part: "The United States shall be liable [with respect to the Act] in the same manner and to the same extent as a private individual under like circumstances. . . ."

We disagree with the contention that *Arney* contains only dicta on the question whether any governmental liability can arise out of a breach of FAA regulations. In *Arney*, a federal district court had granted summary judgment on grounds that individual plaintiffs who violated FAA regulations were contributorily negligent as a matter of law. *Id.* at 657. We held that summary judgment was inappropriate because, under the applicable state law, negligence per se creates a rebuttable presumption only and is not conclusive on the trier of fact. *Id.* At the same time, however, we stated that summary judgment would be appropriate unless the resisting party had presented "at least one viable theory of law under [his] asserted version of the facts that would, if true, entitle the opponent of the motion to judgment as a matter of law." 479 F.2d at 661. We concluded that plaintiffs had stated at least one valid theory in their claim against the government for alleged negligent certification of a modified fuel system. *Id.* Thus, our more general conclusion that "the government may be liable for negligence in improper issuance of a type airworthiness certificate," *id.* at 658, was ultimately necessary to the decision in the case.

The government next contends that in *Arney* we relied only upon *Rapp v. Eastern Air Lines, Inc.*, 264 F.Supp. 673 (E.D.Pa. 1967), which is no longer valid authority.[2] Since the sole case upon which *Arney* rests now lacks vitality, the government argues that *Arney* should not bind us. We disagree. The government misunderstands the significance of our reliance upon *Rapp*. While in *Arney* we chose to rely upon *Rapp*, we were, of course, not bound to do so. We rely upon non-binding decisions only when we believe that the reasoning provides some support for what we conclude to be the correct analysis or result. *See United States v. Safeway Stores, Inc.*, 252 F.2d 99, 101 (9th Cir. 1958) (per curiam). That *Rapp* is no longer case authority in no way undermines the precedential value of *Arney* in this circuit.

The government next attempts to demonstrate why, assuming that *Arney* represents the law of this circuit, we should reconsider and overrule that decision. This argument is misplaced. As in other circuits, *see United States v. Kirk*, 528 F.2d 1057, 1063 (5th Cir. 1976), three-judge panels of the Ninth Circuit will abide by a prior Ninth Circuit panel decision until either the United States Supreme Court or the Ninth Circuit, sitting en banc, explicitly or implicitly overrules it.

While the government has cited authority from other circuits and from district courts, and even cases from this circuit in which federal laws or regulations have not been found to create a duty of due care in the government, *see Harmsen v. Smith*, 586 F.2d 156, 157–58 (9th Cir. 1978); *Kirk v. United States*, 270 F.2d 110, 117–18 (9th Cir. 1959), we do not find those cases to be persuasive on the precise issue before us. *Arney* did not go so far as to hold that a duty of due care would necessarily arise directly out of FAA regulations. Rather, we stated there only that the government "may be liable for negligence in improper issuance of a type airworthiness certificate." 479 F.2d at 658. Because we were reviewing summary judgments, we had no opportunity to elaborate on a fully developed record. Thus, we held only that the plaintiff's factual allegations would support a cause of action for such negligence. *See id.* at 661. We did not indicate what all of the elements of such a cause of action might be.

Finally, the government suggests that *Arney* should not be determinative here because that case was brought pursuant to the admiralty jurisdiction of the district court, *see* 479 F.2d at 655, rather than pursuant to the Act. Although *Arney* is not inapplicable for this reason, the government's statement has some merit. Any action brought pursuant to the Act must meet

---

2. The government correctly observes that *subsequent* to our decision in *Arney*, the Third Circuit revealed that, *prior* to that decision, it had "vacated by agreement" the district court decision in *Rapp, see* 521 F.2d 1399 (3d Cir. 1970) [published in 1975], rather than affirmed that decision as we had believed in *Arney, see* 479 F.2d at 658.

the Act's particular statutory prerequisites for government liability. Thus, while the government *may* be liable for negligent certification of aircraft, this case requires us to spell out the circumstances, pursuant to the Act, in which such liability could actually arise.

## III

We first determine whether, pursuant to the Act, the record in this case will support a finding of liability. The government argues that because the United States' involvement in this case is in the nature of a safety inspection and approval, there is no analogous "private person" liability as required by section 1346(b). To the extent that the government is arguing that because "inspection and certification" of aircraft is a uniquely governmental function, liability may not be predicated upon misfeasance in such activity, the government is plainly wrong. *See, e. g., Indian Towing Co. v. United States*, 350 U.S. 61, 64–65, 76 S.Ct. 122, 100 L.Ed. 48 (1955). To the extent, however, that the government is arguing that because of the nature of the activity involved in this case, the federal regulations concerning the activity should be analyzed differently from an automatic application of state negligence per se law, we conclude that the government is correct. This, we believe, is the only approach that is consistent with the Act, which dictates that the government "shall be liable  .  .  . in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674.

In a series of fairly recent cases, a number of courts have addressed questions regarding the extent of government liability pursuant to the Act, for violation of the government's own regulations when it undertakes so-called "good samaritan" activities such as inspection and certification. We believe that the best approach is summarized in *Blessing v. United States*, 447 F.Supp. 1160 (E.D.Pa.1978). There, the plaintiffs alleged that the government was liable for damages arising out of machine-caused injuries because Occupational Safety and Health Administration (OSHA) employees had negligently inspected the plaintiffs' employer's machines. Responding to an argument raised by the government in defense, the court stated:

> Insofar as the government's contention is that plaintiffs may not base their claims on alleged breaches of a duty arising solely out of federal law when there is no corresponding duty under state tort law,  .  .  . the government is  .  .  . correct. *See Baker v. F & F Investment Co.*, 489 F.2d 829 (7th Cir. 1973); *Devlin Lumber & Supply Corp. v. United States*, 488 F.2d 88 (4th Cir. 1973) (per curiam); *Davis v. United States*, 395 F.Supp. 793 (D.Neb.1975), *aff'd per curiam*, 536 F.2d 758 (8th Cir. 1976). Plaintiffs' claims, however, are based on alleged breaches of duty arising out of Pennsylvania, not federal, law. The Government's argument on this point therefore misses the mark.  .  .  . The relevant question here is whether Pennsylvania would recognize this action if the United States were a private person.

*Id.* at 1186 n.37.

The cases cited in *Blessing* support its initial conclusion that the Act was not designed to redress breaches of federal statutory duties. In *Baker v. F & F Investment Co.*, 489 F.2d 829, 835 (7th Cir. 1973), the court held that "the attempt to vindicate a right dependent, as here, upon federal statutes is not within the ambit of the [Act]." In *Devlin Lumber & Supply Corp. v. United States*, 488 F.2d 88 (4th Cir. 1973) (per curiam), the Fourth Circuit held that since a violation of the Miller Act "can have no counterpart in private activity, and cannot give rise to liability under the common law," 488 F.2d at 89, it follows that "a violation of the Miller Act does not create liability  .  .  . under the Federal Tort Claims Act." *Id.* (citing *United States v. Smith*, 324 F.2d 622, 624–25 (5th Cir. 1963)). Indeed, the Fifth Circuit in *Smith* found it unnecessary to consider whether the Miller Act even placed a duty upon the government to see to it that a contractor executed the proper bond, because analogous private person liability

simply cannot apply where the claimed negligence arises out of the failure of the United States to carry out a statutory duty in the conduct of its own affairs. . . . [I]t is impossible to equate the relationship of the parties in such a situation to any state law relationship where the person sought to be bound is a "private person" who "would be liable to the claimant in accordance with the law" of the state. . . .

This view . . . is consistent with the general concept of the tort claims law as being for the purpose of permitting a recovery in the case of an ordinary common-law tort.

324 F.2d at 624–25. *See also Dalehite v. United States,* 346 U.S. 15, 28, 73 S.Ct. 956, 964, 97 L.Ed. 1427 (1953) ("Uppermost in the collective mind of Congress were the ordinary common-law torts.").

Lack of due care in effecting the execution of a bond by another obviously is not a common-law tort; neither, it would seem, is the simple failure to inspect *another's* vehicles or machinery, or the failure to do so with due care. It follows that the argument advanced by the appellees in this case analogizing to a business' duty to inspect its own property or machinery is not applicable.

Finally, in *Davis v. United States,* 395 F.Supp. 793 (D.Neb.1975), *aff'd per curiam,* 536 F.2d 758 (8th Cir. 1976), which, like *Blessing,* involved an OSHA inspection, the court stated: "Unless the law of Nebraska [the state in question] would declare liability—including a duty—upon a private person in the same circumstances, no jurisdiction lies in this court." *Id.* at 795. *See also Maffei v. Nieves-Reta,* 412 F.Supp. 43, 44 (S.D.Cal.1976) ("proceeding under the Federal Tort Claims Act, the duty inquiry concerns the legal responsibilities imposed by state law upon its private citizens"), *aff'd mem.,* 549 F.2d 807 (9th Cir. 1977).[3]

An important policy underlies these holdings that a federal statutory duty does not automatically give rise to a duty of care to which a state's negligence per se doctrine would be applied. The government undertakes conduct in a variety of ways. Much of it, *e. g.,* delivery persons driving trucks, is exactly what private corporations and persons ordinarily do. In other activities, however, such as inspecting privately owned aircraft, the government performs what may be called "good samaritan" functions. Although such functions are carried out pursuant to statute or to regulations, they do not arise from a primary duty to provide the service in question. Thus, not only would there be no potential liability if government declined to provide such services at all, but the government does not purport to relieve other actors of the primary duty to see that the underlying activity is accomplished safely or consistently with some other important public policy. If such undertakings automatically created a cause of action for negligent performance, the government might be less inclined to assume such tasks in the future. *See Clemente v. United States,* 567 F.2d 1140, 1150–51 (1st Cir. 1977); *Blessing v. United States, supra,* 447 F.Supp. at 1199–1200.

■ Nevertheless, we also agree with the conclusion reached in *Blessing v. United States, supra,* that negligent performance of a federal statutory duty may give rise to a claim under the Act in circumstances in which applicable state law recognizes a private cause of action. Thus, we do not agree with *Davis v. United States, supra,* to the extent that that case may be read to preclude liability when a "government inspector for undertaking the inspection is the duty to do so under federal law." 395 F.Supp. at 797. The reason for undertaking the inspection is not important. While the existence of a federal statutory duty as the reason for undertaking the action will not automatically create liability, neither will

---

3. In addition to the cases discussed in the text, *see generally Zeller v. United States,* 467 F.Supp. 487, 504–05 (E.D.N.Y.1979); *Gelley v. Astra Pharmaceutical Prods., Inc.,* 466 F.Supp. 182, 185–86 (D.Minn.1979); *Geo. Byers Sons, Inc. v. East Europe Import Export, Inc.,* 463 F.Supp. 135, 137–38 (D.Md.1979); *Mercer v. United States,* 460 F.Supp. 329, 331 (S.D.Ohio 1978); *Mosley v. United States,* 456 F.Supp. 671, 674–76 (E.D.Tenn.1978).

such a duty preclude liability. The crucial inquiry is whether, in undertaking the inspection, a duty arose under state law because of the relationship thereby created—the good samaritan rule.

In *Indian Towing Co. v. United States, supra,* 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48, the Supreme Court suggested the proper basis for liability in tort for these kinds of governmental activities. In that case, the Court ruled that the government could be held liable for its negligent operation of a lighthouse pursuant to the so-called "good samaritan" doctrine. As the Court stated, "one who undertakes to warn the public of danger *and thereby induces reliance* must perform his 'good Samaritan' task in a careful manner." *Id.* at 64–65, 76 S.Ct. at 124 (emphasis added).

The *Indian Towing* rule is perhaps best illustrated in those cases in which federal courts have found no basis for liability on the facts presented. For example, in *Clemente v. United States, supra,* 567 F.2d 1140, the First Circuit considered the possibility of basing governmental liability on the failure of FAA employees to warn flight passengers of certain dangers as required by an order of an FAA regional director. Having observed that "[t]he agency, in issuing the order, was acting entirely gratuitously and was under no obligation or duty to . . . [the] passengers," 567 F.2d at 1144,[4] the court analogized to a similar order of a corporate employer requiring gratuitous inspections of adjacent properties to avoid property damage due to fire. *Id.* at 1145. Relying on §§ 323 and 324A of the Restatement (Second) of Torts,[5] the court found that

> liability in such a situation must be predicated on one of three grounds: the conduct of the employee actually increased the risk of harm to the damaged firm; the harm to the damaged firm resulted from its reliance on the employee carrying out the inspection as ordered; or there existed a prior duty to inspect owed by the employer to the damaged firm. *See generally Davis v. Liberty Mut. Ins. Co.,* 525 F.2d 1204 (5th Cir. 1976).

*Id.* at 1145. Finding that the failure to warn had not increased the risk, and that there was no evidence of public reliance on the order of the regional director, the court found that there was no basis for liability. *Id.*

Similarly, in *Thompson v. United States, supra,* 592 F.2d 1104, we emphasized that

---

4. The court is here referring to the lack of a statutory duty to provide the protective measures required by the order. We have already concluded that the existence of a federal statutory duty does not of itself create a duty to be vindicated by the Act. Although the court in *Clemente* apparently agrees generally with this conclusion, 567 F.2d at 1149, it suggests that a court might more readily infer an actionable duty where an underlying statutory duty existed, reasoning that such a duty might more likely induce reliance and reflect congressional intent that a particular class receive certain protections. *Id.* at 1150. We agree that such an underlying statutory duty might strengthen a claim of justifiable reliance, but we believe that congressional intent to be irrelevant for purposes of actionability under the Act. In any event, *Clemente's* analysis of the basis for good samaritan liability is helpful.

5. Restatement (Second) of Torts §§ 323, 324A (1965) state:

§ 323. Negligent Performance of Undertaking to Render Services

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if

    (a) his failure to exercise such care increases the risk of such harm, or

    (b) the harm is suffered because of the other's reliance upon the undertaking.

§ 324A. Liability to Third Person for Negligent Performance of Undertaking

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

    (a) his failure to exercise reasonable care increases the risk of such harm, or

    (b) he has undertaken to perform a duty owed by the other to the third person, or

    (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

the reliance element is an integral part of the *Indian Towing* good samaritan analysis. *See id.* at 1109–10. The plaintiffs in *Thompson* asserted that the Bureau of Land Management (BLM) had, by virtue of internal regulations, assumed a duty to supervise the safety of a motorcycle race on federal land for which it had granted a permit. We stated that BLM did not actually supervise the race and that "[n]either the participants nor the spectators relied upon the BLM employees to supervise the race." *Id.* at 1110. This, we believed, was contrary to the circumstances in *Indian Towing*, where the Coast Guard had actually maintained a lighthouse upon which others relied. *Id.* at 1109–10. Finally, we stated quite clearly that "the mere provision for government safety inspections, or the ability to stop an activity for failure to comply with safety standards, does not impose liability on the government for failure to do so." *Id.* at 1110.

*Blessing v. United States, supra,* 447 F.Supp. 1160, also found that plaintiffs had failed to allege facts sufficient to state a cause of action under the good samaritan doctrine of the Restatement or applicable state law. In *Blessing,* injured employees had sued under the Act based on alleged negligent inspections of the premises of a private employer by OSHA inspectors. The court found that the plaintiffs failed to allege the necessary elements of increased risk of harm or reasonable reliance sufficient to allow the case to go to trial. *Id.* at 1196–99. The court pointed out that these requirements

> ensure that before a good Samaritan is held liable for negligent performance of his undertaking, he in some positive way must have contributed to the injury, either by increasing risk of harm, . . . by interposing himself between another

person and the duty that the other person owed to someone else, . . . or by inducing reliance on his undertaking . . . .

447 F.Supp. at 1199. Even so, the court found that it had tentative jurisdiction under the Act and granted plaintiffs a 60-day period of discovery to develop evidence that might enable them to state a cause of action. *Id.* at 1200. *See also Toppi v. United States,* 327 F.Supp. 1277, 1279 (E.D.Pa.1971) (plaintiff could make out a claim by establishing "that the government in fact undertook inspection, that such undertaking was negligently performed, and that plaintiff reasonably relied on such inspection thereby causing his injuries").

We thus hold that in the absence of a demonstration that the applicable state law requirements of the good samaritan doctrine are satisfied in any given case, the government may not be held liable pursuant to the Act for negligence in inspection of private activities or property, although federal statutes or regulations direct that government employees undertake the inspection activity.[6]

There are two general conceptualizations of the elements required by good samaritan doctrine. Some courts apparently view these elements as a necessary prerequisite to a finding of any duty at all. *See, e. g., Clemente v. United States, supra,* 567 F.2d at 1149. Other courts have chosen to view the undertaking itself as creating the "duty," and these elements as being necessary for a finding of proximate or legal causation. *See Blessing v. United States, supra,* 447 F.Supp. at 1193 & n.51, 1200 (applying Pennsylvania law). Pursuant to the mandate of the Act, a federal court must view the doctrine according to the state law which governs the particular case

---

6. We recognize that there have been cases in this circuit in which we have inquired as to whether or not a particular statute or set of regulations aimed at a good samaritan governmental activity created an actionable duty in the United States, as if this might be independently relevant to the government's liability. Apparently, no duty has ever been found, and we have not been forced before this case to

consider how such a duty would fit into the Act's scheme. *See, e. g., Harmsen v. Smith,* 586 F.2d 156, 157–58 (9th Cir. 1978); *Kirk v. United States,* 270 F.2d 110, 117 (9th Cir. 1959). There are, therefore, apparently no cases in which we have found that a mere violation of federal statutes or regulations similar to those involved here would automatically result in governmental liability pursuant to the Act.

then before it. The causation view does underscore the notion of responsibility for injuries arising out of an accident related to an undertaking. If one of the prerequisite elements is not present, we cannot say that the person or government engaging in the undertaking is responsible for, and consequently should be liable for, any injuries sustained.

### IV

The requirement of reliance or some other good samaritan prerequisite element is supported by cases involving an analogous governmental activity. In a number of instances we have found air traffic controllers liable for negligence in giving or failing to give warnings to pilots. In doing so, we, like other courts, have based our evaluation of the controllers' conduct upon relevant regulations and air traffic control manuals. *See, e. g., Spaulding v. United States*, 455 F.2d 222, 226 (9th Cir. 1972); *Gill v. United States*, 429 F.2d 1072, 1075 (5th Cir. 1970); *Ingham v. Eastern Air Lines, Inc.*, 373 F.2d 227, 234–35 (2d Cir.), *cert. denied*, 389 U.S. 931, 88 S.Ct. 295, 19 L.Ed.2d 292 (1967).

In *Gill*, the Fifth Circuit stated that "federal regulations may impose duties and standards of conduct upon . . . actors" pursuant to the Act, 429 F.2d at 1075, and continued:

> The United States may be liable under the Federal Tort Claims Act for negligent provision of services upon which the public has come to rely. *Indian Towing Co. v. United States* . . . . The government's duty to provide services with due care to airplane pilots may rest either upon the requirements of procedures manuals spelling out the functions of its

air traffic controllers or upon general pilot reliance on the government for a given service . . . . .

*Id.* (citations omitted). We indicated in *Spaulding*, which cited *Gill*, that the duty resting on the manuals arises because of expected pilot reliance, in the air traffic control situation, on published explanations of controller functions.

> The air traffic controller is required to give all information and warnings specified in his manuals, and in certain situations he must give warnings beyond the manuals. This duty to warn is based on the simple tort principle that once the Government has assumed a function or service, it is liable for negligent performance.

455 F.2d at 226 (footnotes omitted).

In a lengthy analysis, *Clemente v. United States, supra,* demonstrated that although "one could generalize from the air controller's duties to the responsibilities of FAA inspectors, both history and policy establish that the differences between the two are extensive and require different legal consequences." 567 F.2d at 1147 (footnote omitted). Observing that "[t]he role of control tower operators existed prior to any attempt by the federal government to regulate them," *id.,*[7] the court found that "any person endeavoring to undertake it owes a duty to those dependent on the quality of his performance." *Id.* The court found that "[t]ort liability is intrinsic in the function [of control tower operators]," *id.,* quite apart from the particular procedures set forth in federal manuals, because "[t]he relationship between pilots and passengers and air controllers is imbued with reliance, a foundation stone of tort liability." *Id.* at

---

**7.** The historical developments leading to government assumption, of air traffic control, as summarized briefly in *Clemente*, suggest that the cases finding liability in that area might also have relied on Restatement (Second) Torts § 324(b). That provision provides for liability where the good samaritan assumes a duty owed by another to a third person. *See* note 5 *supra*. In *Blessing, supra,* the court found that this provision "reach[es] not the situation in which one undertakes to perform functions coordinate to—or even duplicative

of—activities imposed on another by a legal duty, but rather the situation in which one actually undertakes to perform for the other the legal duty itself." 447 F.Supp. at 1193–94. Whereas the inspections provided for in situations like *Blessing* and the case before us merely supplement another's primary duty, the air traffic control cases seem to involve a federal supplanting of the primary duty owed by airports to take reasonable steps to assure the safe routing of planes. *See id.* at 1193–95.

1148.[8] This inherent and ongoing reliance by pilots upon controllers satisfies the good samaritan test and, alone, distinguishes the air traffic controller cases from that before us here.

8. Thus, *Clemente* also limited the possible implications of an earlier First Circuit case. In *Delta Air Lines, Inc. v. United States*, 561 F.2d 381, 393–94 (1st Cir. 1977), cert. denied, 434 U.S. 1064, 98 S.Ct. 1238, 55 L.Ed.2d 764 (1978), the court stated that governmental negligence could be grounded on "the unexcused violation by a federal employee of procedures established by the Government which have as their purpose the protection of those who were in fact harmed." *Clemente* limited this analysis to "the context in which the opinion was written, that is, the procedures governing the conduct of air tower controllers," 567 F.2d at 1147 n.10, which *Clemente* demonstrated to be unique. *See id.* at 1147–48.

9. In many such cases, the courts have not considered or discussed the interplay of federal statutes and regulations and state law within the framework of the Act. *See, e. g., Griffin v. United States*, 500 F.2d 1059, 1069–70 (3d Cir. 1974) (liability for negligence in permitting a batch of polio vaccine to be released to the public); *Underwood v. United States*, 356 F.2d 92, 98–100 (5th Cir. 1966) (liability for violation of Air Force regulations regarding dispersal of firearms which court found were designed in recognition of state law regarding custody of firearms, and for the benefit of the public; analysis of proximate cause under state law); *Reminga v. United States*, 448 F.Supp. 445 (W.D.Mich.1978) (considering various possible bases of liability, including justifiable reliance, and several duties in federal law but not discussing elements of state law or good samaritan doctrine directly); *Gibbs v. United States*, 251 F.Supp. 391, 399–400 (E.D.Tenn.1965) (finding that Federal Aviation Act of 1958 established standards of care for FAA regarding its certification of aircraft on basis of *Indian Towing*, but omitting any consideration of good samaritan doctrine's prerequisite elements or of any other state law in relation to government's certification of pilot, airlines, and aircraft in issue).

One case which adopted this "federal duty" approach illustrates the importance of distinguishing between the possibility of a federally-based actionable duty and the use of federal regulations as proof of negligent conduct. In *Betesh v. United States*, 400 F.Supp. 238, (D.D. C.1974), the court held that a federal regulation directing Selective Service examining physicians to advise rejected examinees who need medical attention to seek advice from a doctor could be the basis for liability under the Act. The court found that under applicable state law, "a Federal regulation presumptively establishes a standard of care" and "establishes a presumption of breach of duty." *Id.* at 243. In response to the argument that no analogous private liability could exist here because no private doctors were subject to the regulation, the court reasoned that although government liability is limited to "like circumstances" as private liability, this does not require that "every aspect of a cause of action be identical to an action between private parties." *Id.* at 244. Thus, courts could properly take into account aspects that are unique to governmental functions, such as governmental regulations. *Id.* The court went on, however, to demonstrate that applicable state law had found medical malpractice liability in circumstances in which private physicians had examined prospective employees for the benefit of an employer. *Id.* at 246. In our view, the court's analysis should have been reversed. Once the court had found an actionable duty under state law, the federal regulation may well have provided relevant evidence as to what conduct would be reasonable under all the circumstances. We, therefore, disagree with the court's analysis to the extent that it would lead to governmental liability although a private person could not be held liable under similar circumstances. We agree with the cases holding that the existence of a federal statute or regulations which implement government activity cannot, alone, create such a duty in the government for purposes of the Act.

*United States v. Muniz*, 374 U.S. 150, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963), does not require a different analysis or result. In *Muniz*, the Supreme Court considered the possibility that state law cases holding state governments immune from liability for negligent care or protection of prisoners would also bar federal government liability under the Act. In rejecting this approach, the Court focused on the Act's purpose of waiving federal sovereign immunity and concluded that a local rule based on sovereign immunity policies should not be applied: "Just as we refused to import the 'casuistries of municipal liability for torts' in *Indian Towing*, so we think it improper to limit suits by federal prisoners because of restrictive state rules of immunity." *Id.* at 164, 83 S.Ct. at 1859. Having already found that appropriate state negligence law would be applied to prisoners' claims, consistent with the nature of the claim and the activity which produced it, *id.* at 160–61, 83 S.Ct. 1850, the Court, nevertheless, added at this point that "the duty of care owed by the Bureau of Prisons to federal prisoners is fixed by 18 U.S.C. § 4042, independent of an inconsistent state rule." *Id.* at 164–65, 83 S.Ct. at 1859. We believe that this statement should be read as finding a duty inhering in the nature

We recognize that other cases apparently have found governmental liability without considering state law beyond applying negligence per se tort doctrine.[9] Although we do not comment on the result in any partic-

ular case, we believe that such an approach is incorrect. When the regulations implement only good samaritan conduct of the government, we do not believe that liability should be predicated upon violation of regulations alone. At the same time, such regulations or statutes may create a "duty" such that the government may not take advantage of the "discretionary function" exception of the Act, 28 U.S.C. § 2680(a). *See United Air Lines, Inc. v. Wiener*, 335 F.2d 379, 395 (9th Cir.), *cert. dismissed*, 379 U.S. 951, 85 S.Ct. 452, 13 L.Ed.2d 549 (1964).

V

We have concluded that, pursuant to the Act, courts may not determine governmental liability without considering the liability of a private person in "like circumstances" pursuant to relevant state law. Although the pretrial conference order in this case demonstrates possible recognition of this fact, the district court's findings of fact and conclusions of law omit any reference to state law. Moreover, in response to the government's argument in its opening brief, that the appellees had not cited the district court to any state law on liability, the appellees apparently conceded this charge, responding in the following general terms:

> [C]learly every state adheres to the elementary principles of tort liability which have always been that everyone, including the United States government, owes a duty to all persons who are foreseeably endangered by his conduct with respect to all risks which make the conduct unreasonably dangerous.

Moreover, everyone, including the United States government's FAA, who undertakes affirmative conduct to protect a clearly defined class of persons who *justifiably rely* on that conduct is liable if he conducts himself without due care, and injuries to those persons are the proximate result of that negligence.

(Emphasis added.)

Appellees' assumption is not necessarily correct. *See Mosley v. United States*, 456 F.Supp. 671, 675 (E.D.Tenn.1978) (including that Tennessee has not adopted the good samaritan rule). More importantly, in this case, neither reliance nor any other of the good samaritan doctrine's usual prerequisite elements was asserted in the appellees' complaint, nor found or discussed by the district judge in his findings of fact and conclusions of law. We cannot uphold the judgment of the district court on the basis of nonexistent allegations or findings. The district judge found the government liable to the plaintiffs without ensuring that all elements of a cause of action pursuant to relevant state law have been met. The case, therefore, must be remanded to the district court for further proceedings consistent with this opinion.

On remand, the district judge may well need to determine which state's substantive law applies, whether that state has adopted or would apply any form of good samaritan rule, and, if so, whether the appellees' case satisfies the rule, as formulated by that state. Should state law preclude liability against a private person who undertakes an inspection on behalf of others, or if the court finds that the government's activity here would not allow a finding that a duty

of the custodial relationship, which is established in part by the federal statute and in part by the activity itself. Under this interpretation, the duty stems from state tort law rather than directly from the statute. This reading alone can reconcile the statement with the Court's earlier recognition that "[w]hether a claim could be made out would depend upon whether a private individual under like circumstances would be liable under state law." *Id.* at 153, 83 S.Ct. at 1853. *See also id.* at 165 n.27, 83 S.Ct. 1850.

Thus, while a prisoner's remedy for a breach of the duties prescribed by section 4042 is an

action brought pursuant to the Act, *Williams v. United States*, 405 F.2d 951, 954 (9th Cir. 1969), such actions still require us to discover whether a private individual responsible for the care and protection of another individual would be liable pursuant to state law in the circumstances of the particular case. This analysis, of course, is analogous to our holding here that the district court must look to state law to determine whether or not an individual who undertakes to inspect another's property could be held liable under the circumstances of this case.

relationship had been created or a proximate cause requirement satisfied, the district judge must dismiss the action for failure to state a claim pursuant to the Act.

REVERSED AND REMANDED.